Consuelo ANGUIANO; Mariano Anguiano, husband and wife; Catherine Baker; Billy Baker, husband and wife; Joyce Barton, Individually; Inga Beavers; Joseph Beavers, husband and wife, et al., Plaintiffs–Appellants,

v.

E.I. DU PONT DE NEMOURS & COMPANY, INC., a Delaware corporation; Jack Kent; Jane Doe Kent, husband and wife; Theodore Kiersch; Jane Doe Kiersch, husband and wife; Edward Schneider; Jane Doe Schneider, husband and wife, Defendants–Appellees.

Patricia CHRISTIANSEN, Plaintiff–Appellant,

v.

E.I. DU PONT DE NEMOURS & CO., INC., a Delaware corporation, Defendant–Appellee.

Nos. 93–15401, 93–16559.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1994.

Decided Jan. 10, 1995.

Carter Morey, Haralson, Kinerk & Morey, Tucson, AZ, for plaintiff-appellant Anguiano.

JoJene E. Mills, Norris & Mills, Phoenix, AZ, for plaintiff-appellant Christiansen.

Edward M. Mansfield, Lewis and Roca, Phoenix, AZ, for defendants-appellees.

Before: SKOPIL, NORRIS, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a manufacturer has a duty to warn of a danger posed by material which is later used in a medical implant device.

I

Between 1978 and 1986, Consuelo Anguiano and twenty-one other appellants (collectively "Anguiano") had temporomandibular ("TMJ") implants placed in their jaws and subsequently suffered tissue reaction when the implants fragmented. The implants were constructed by Vitek, Inc., a company formed in 1969 by Charles Homsy, a former researcher at DuPont who left to develop medical implants made from a composition called Proplast. Vitek produced Proplast by mixing plytetrafluoroethylene ("PTFE"), a form of Teflon, with carbon fibers and other material; filtering, compressing, and rolling the mixture into a cake; then heating, drying, leaching, and redrying the cake. After this process, PTFE constituted about 90% of Proplast.

Vitek purchased the PTFE from DuPont. Because Vitek planned to use PTFE for medical purposes, DuPont required Homsy to sign a letter stating that Vitek assumed full responsibility for any consequences resulting from its use of PTFE. In the letter, DuPont informed Vitek that DuPont had not conducted tests on PTFE's suitability for medical uses and that some studies had concluded that implants made from PTFE deteriorated and caused tissue inflamation. One 1965 study by John D. Leidholt on the use of PTFE implants in dog hips concluded that PTFE was not an acceptable material for hip implants because it flaked into particles causing inflammation. A 1966 study by John Charnley also warned against the use of PTFE in hip implants because it deteriorated rapidly. Homsy signed the waiver and acknowledged the existence of these studies.

In January 1991, the FDA ordered removal of Proplast implants from the market because of their fragmentation and irritation to human tissue. Since then, many suits have been filed in both state and federal court.

Anguiano filed suit in Arizona state court in September 1991, charging DuPont with liability for their injuries because it had breached its duty to warn them of the risks of TMJ implants made from PTFE. DuPont removed to federal court and moved for summary judgment, which was granted, 808 F.Supp. 719.

After summary judgment was entered in this case, Patricia Christiansen, who had a case pending before the same judge, agreed to make herself subject to that summary judgment order so that she could join this appeal. The district court then applied its statement of uncontroverted fact and conclusions of law in this case to Christiansen and entered judgment against her.

All appellants timely appealed.

## II

Before reaching Anguiano's claims, we must first dispose of DuPont's argument that these claims are preempted by federal law.

DuPont argues that the Medical Device Amendments of 1976 ("MDA"),[1] amending 21 U.S.C. §§ 301–92, preempt state statutes and common law regulating medical devices, thus precluding the appellants' state law claims for negligence and strict liability.

■ In promulgating the MDA, Congress expressly intended to preempt state tort law. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 16 (1st Cir.1994); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1420 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v. Collagen Corp.*, 983 F.2d 1130, 1133 (1st Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). The MDA provides:

[No] State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). The Food and Drug Administration ("FDA"), pursuant to its power to draw up regulations under 21 U.S.C. § 371(a), established that the MDA preempts any state law "which is different from, or in addition to, any requirement applicable to such device under any provision of the act." 21 C.F.R. § 808.1(b). Clearly, the MDA does not preempt all state laws relating to medical devices. Rather, "the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device." *Moore v. Kimberly–Clark Corp.*, 867 F.2d 243, 245 (5th Cir.1989) (citation omitted); *King*, 983 F.2d at 1134 ("FDA regulations provide that preemption does not apply when the FDA has issued no regulations or other requirements specific to the particular device.").

■ There is no federal preemption here because the FDA has issued only identification and classification regulations relating to PTFE vitreous carbon material, 21 C.F.R.

1. We treat the MDA collectively as a single stat- ute.

§ 872.3680, mandibular implant facial prosthesis, 21 C.F.R. § 874.3695, and PTFE with carbon fibers composite implant material, 21 C.F.R. § 878.3500.[2] As identification provisions, these regulations do not "relate to the safety or effectiveness of the device," 21 U.S.C. § 360k(a), and so are not specific requirements which preempt state law. "An 'identification provision' in the federal regulations does not act as a specific requirement which would preempt state common law." *Bravman v. Baxter Healthcare Corp.*, 842 F.Supp. 747, 757 (S.D.N.Y.1994); *Elbert v. Howmedica, Inc.*, 841 F.Supp. 327, 331 (D.Haw.1993); *but see Cameron v. Howmedica*, 820 F.Supp. 317, 320 (E.D.Mich.1993). Thus, as regards PTFE, the MDA does not provide specific requirements which preempt state law.

■ DuPont argues that, regardless of the absence of specific provisions regulating PTFE, the basic statutory framework of the MDA requiring all medical devices to be registered, classified, and approved by the FDA, 21 U.S.C. § 360, establishes the necessary requirements to preempt state law. The MDA divides medical devices into three classes. Class I devices pose little threat to public health and safety and are subject only to general controls on manufacturing. Class II devices are more complex and may be subject to "the promulgation of specific performance standards, should the FDA deem them a sufficient health hazard as to require strict product specifications or warnings."

*Stamps*, 984 F.2d at 1418. Class III devices present a potential unreasonable risk of illness or injury and thus require premarket approval, a stringent process requiring the manufacturer to submit detailed information to an FDA panel of experts. *Id.* at 1419. The FDA classified PTFE vitreous carbon material as a Class II device. 21 C.F.R. § 872.3680.

■ Because of the more extensive requirements imposed on Class III devices, the MDA preempts state law regarding a Class III device even if the only MDA regulation specifically addressing the device is an identification regulation. *Bravman*, 842 F.Supp. at 761. Class II devices, however, must carry some specific regulation beyond the identification regulation for preemption to apply. *Elbert*, 841 F.Supp. at 331 (since Class II devices "do not have nearly as extensive requirements imposed upon them" as Class III devices, preemption does not apply for Class II devices absent regulation other than identification regulation).[3] Thus, DuPont's argument that the MDA regulatory framework preempts state law, even absent specific provisions, applies only to Class III devices, not Class II devices like Proplast.

■ Because the FDA has not promulgated specific regulations regarding PTFE, the MDA does not preempt Anguiano's state law claims.[4]

2. There is a question whether PTFE vitreous carbon material, also called Proplast, and PTFE with carbon fibers composite implant material are the same as PTFE, as sold in its original state by DuPont. The district court concluded that Vitek processed PTFE to create a new product, Proplast. *Anguiano v. E.I. DuPont de Nemours & Co.*, 808 F.Supp. 719, 725 (D.Ariz.1992). Anguiano argues that Proplast is substantially the same material as PTFE. For the purposes of our preemption discussion, we assume that the regulations pertaining to materials made from PTFE apply equally to PTFE itself.

3. No federal appellate court, apparently, has discussed MDA preemption of state claims concerning Class II devices for which the FDA has promulgated only identification regulations. The cases on MDA preemption involve Class III devices—*Stamps* (cosmetic anti-wrinkle treatment), *Mendes* (pacemaker), *King* (cosmetic anti-wrinkle

treatment)—or investigational devices—*Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th Cir.) (intraocular lenses), *cert. denied*, —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992); *Duncan v. Iolab Corp.*, 12 F.3d 194 (11th Cir.1994) (same). Both Class III and investigational devices are subject to extensive regulatory requirements. 21 C.F.R. § 813; *Stamps*, 984 F.2d at 1419. The only appellate Class II case, *Moore*, involved a Class II device for which the FDA has promulgated specific regulations concerning warnings on packaging. 867 F.2d at 246. The court held that only the plaintiff's state law claims on warnings, not her claims on design and manufacturing, were preempted. *Id.*

4. Alternatively, we could base our conclusion that the appellants' state claims are not preempted by the MDA on the district court's finding that PTFE is not a medical device and so is not subject to the MDA's purview, as discussed *infra*.

## III

Anguiano argues that the district court erred in granting summary judgment to Du-Pont because there is a genuine issue of material fact as to whether DuPont had a duty to warn under the MDA or sections 388 and 402A of the *Restatement (Second) of Torts.*

### A

■ Anguiano maintains that section 352(f) of the MDA required DuPont to provide a warning on PTFE's labels.[5] The district court concluded that PTFE is not a medical device and, accordingly, is not subject to the requirements of the MDA. We agree.

The MDA provides that a medical device is

[a]n instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, parts or accessory....

21 U.S.C. § 321(h). Anguiano argues that since PTFE is one of the ingredients used to make Proplast, it is a component of Proplast, and thereby falls within the definition of section 321(h). We conclude, however, that there is a crucial distinction between "components" and "ingredients." Indeed, the MDA expressly distinguishes between components and ingredients of a device. *See* 21 U.S.C. § 360d(a)(2) (performance standard shall include information on the "construction, components, ingredients, and properties of the device"); 21 U.S.C. § 360e(c)(1) (application for premarket approval of a device shall include a statement of the "components, ingredients, and properties" of the device). Finally, while component is expressly included in the definition of a "medical device," ingredient is not.

■ Unfortunately, the MDA does not define either ingredient or component.[6] Nevertheless, we conclude that DuPont's raw PTFE is more appropriately characterized as an ingredient. DuPont sold PTFE as a raw material. To create Proplast, the PTFE was mixed with carbon fibers and other materials, and filtered, compressed, heated, dried, leached, and redried. If we accept Anguiano's argument, every raw material used in the manufacture of a device could become subject to the requirements of the MDA. For example, steel, aluminum, gold and even water would become devices subject to registration with the FDA. Even the lumber mill that sells wood used to make crutches would be treated as a manufacturer of a medical device. We conclude that such an interpretation carries the Act far beyond the obvious intent of its language. The district court's grant of summary judgment on this claim was appropriate.

### B

■ Anguiano claims strict liability and negligent failure to warn under sections 388 and 402A of the *Restatement (Second) of Torts.* Arizona courts apply the Restatement to tort cases. *Ft. Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962, 968 (1990). Under section 402A, a product may be defective and unreasonably dangerous if the manufacturer does not provide a warning to consumers. *Kavanaugh v. Kavanaugh,* 131 Ariz. 344, 641 P.2d 258, 262 (App.1982). "The defectiveness or unreasonable dangerousness of a product because of failure to warn depends on the same considerations respecting harm as in the context of negligence...." *Hohlenkamp v. Rheem Mfg. Co.,* 123 Ariz. 535, 601 P.2d 298, 301 (App.1979); *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271, 279 (App.1978). Therefore, the question whether a manufac-

5. This section provides that "[a] drug or device shall be deemed misbranded ... (f) Unless its labeling bears ... such adequate warnings ... against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users." 21 U.S.C. § 352(f).

6. Implementing regulations do define component as:

any material, substance, piece, part, or assembly used during device manufacture which is intended to be included in the finished device. 21 C.F.R. § 820.3. That regulation, however, is expressly "not intended to apply to manufacturers of components or parts of finished devices." 21 C.F.R. § 820.1. Moreover, we note that "ingredient" is not defined as part of a component.

turer has a duty to warn under strict liability depends on the standards for determining a duty to warn under a negligence action pursuant to section 388. *See Shell Oil,* 581 P.2d at 278–79; *Bryant v. Technical Research Co.,* 654 F.2d 1337, 1345 n. 10, 1348 n. 14 (9th Cir.1981) (applying Restatement under Idaho law); *Veil v. Vitek, Inc.,* 803 F.Supp. 229, 234 (D.N.D.1992) (providing string cite of circuit court holdings); *Higgins v. E.I. DuPont de Nemours & Co.,* 671 F.Supp. 1055, 1060 (D.Md.1987); Prosser and Keeton on Torts (5th ed. 1984) § 99 at 697.

 Section 388 holds a supplier of a product liable to the consumer for harm caused by the use of the product if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

The district court held that DuPont had no duty to warn: "[B]ecause DuPont had no knowledge and no reason to know that PTFE was dangerous for use in TMJ implants, it did not have a duty to warn even Vitek, much less the plaintiffs." *Anguiano,* 808 F.Supp. at 724. The district court expanded on this holding in its order denying the appellants' motion for reconsideration:

The court acknowledges that the facts show that Du Pont knew of the dangers of using PTFE in load-bearing joints prior to its sale of PTFE to Vitek and knew that Vitek planned to use PTFE in TMJ implants. This does not mean, however, that Du Pont had knowledge from which it should have known that PTFE posed a danger in TMJ implants.

ER Tab 4 at 7. Anguiano argues that the district court erred because it is a disputed issue whether DuPont knew of PTFE's dangerousness in TMJ implants.

 We disagree. Anguiano has adduced no evidence showing that DuPont knew that the TMJ joint is a load-bearing joint posing the same risks for PTFE implants as does a hip joint. The only evidence in the record even suggesting that DuPont had such knowledge is a 1984 memorandum by DuPont employee M.W. Bernhardt recording notes he had taken at the American Association of Oral Maxillofacial Surgeons 1984 Clinical Congress. However, Bernhardt's memo indicates that of the twenty-three speakers participating in the conference, only two were wary about using Proplast implants. The memo mentions that Dr. Bruce Sanders stated that " 'Proplast' is very difficult to remove due to its tendency to fracture into many pieces," and that Dr. Richard Akin warned that a potential problem of using Proplast implants is that it "deteriorates rapidly."

Bernhardt's memo is not sufficient to create a genuine issue of material fact. Although the memo suggests that some practitioners had experienced difficulties using the implants, it does not show that DuPont knew or had reason to know of the danger. There is no evidence in the record that anyone at DuPont other than Bernhardt saw the memo, which was directed to "the file," or that Bernhardt informed DuPont employees in a position to appreciate the significance of Dr. Sanders' and Dr. Akins' comments. Neither has Anguiano demonstrated that Bernhardt himself was in a position to appreciate the significance of the comments.

Thus, Anguiano has not alleged facts indicating that DuPont had reason to know that the TMJ implants would behave as did the hip joint implants. Without this knowledge, DuPont had no duty to warn under sections 388 and 402A, and summary judgment was proper.[7]

---

7. Anguiano also argues that it is disputed whether Vitek's processing of PTFE into Proplast substantially changes PTFE. Section 402A(1)(b) holds a seller of a defective and unreasonably dangerous product liable if the product "reach[es] the user or consumer without substan-

tial change in the condition in which it is sold." Since we hold that PTFE was not a defective and unreasonably dangerous product because of a failure to warn, we do not decide whether the process of transforming PTFE into Proplast substantially changed the PTFE.

## IV

We affirm the district court's grant of summary judgment in favor of DuPont.

AFFIRMED.

DuPont further argues that if PTFE was defective because of its failure to warn, it had no duty to warn Anguiano because of the bulk supplier doctrine created by Comment *n* to section 388 of the Restatement. Since we hold that DuPont had no duty to warn, we need not reach this issue.