Charlotte **KENNEDY** and Robert L. Kennedy, Plaintiffs–Appellants,

v.

**COLLAGEN CORPORATION,** Defendant–Appellee.

No. 94–15197.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1995.

Decided Oct. 17, 1995.

As Amended Nov. 27, 1995.

Clinard Hanby, Michael M. Essmyer & Associates, Houston, Texas, for plaintiffs-appellants.

Joe W. Redden, Jr., Beck, Redden & Secrest, Houston, Texas, for defendants-appellees.

Before: FERGUSON, REINHARDT and THOMPSON, Circuit Judges.

Opinion by Judge FERGUSON; Concurrence by Judge REINHARDT.

FERGUSON, Circuit Judge:

In this appeal, Charlotte and Robert Kennedy challenge the district court's grant of summary judgment in favor of defendant, Collagen Corporation ("Collagen"). The Kennedys contend that their state common law claims are not preempted by the Medical Device Amendments of 1976 ("the MDA"), 21 U.S.C. §§ 360c–360l (Supp.1995), and that genuine issues of material fact remain in issue in their suit against Collagen. We reverse the district court and remand for trial.

## I. BACKGROUND

This action arises out of Charlotte Kennedy's treatment with Zyderm Collagen Implant ("Zyderm"), a prescription medical product manufactured by defendant Collagen. Zyderm is used by physicians to treat soft tissue defects of the skin caused by disease, trauma, congenital defects, or aging. Following Charlotte Kennedy's treatment with Zyderm, she developed systemic lupus erythematosus ("SLE"), an autoimmune disease.

Upon contracting SLE, Charlotte and Robert Kennedy brought suit against Collagen alleging negligence, strict liability, breach of warranty, battery, conspiracy and loss of consortium. Based on the Kennedys'

failure to present sufficient evidence of causation, the district court granted Collagen's original motion for summary judgment. This Court affirmed the decision of the district court in June 1992, but later granted the Kennedys' petition for rehearing, withdrew its earlier decision and reversed the district court. *Kennedy v. Collagen*, 967 F.2d 587 (9th Cir.1992), *withdrawn*, 974 F.2d 1342 (9th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).

The present appeal stems from Collagen's motion for summary judgment filed on remand to the district court. In its second motion for summary judgment, Collagen asserts that all of the Kennedys' claims are preempted by the MDA, 21 U.S.C. § 360k(a). The district court granted Collagen's motion, finding that the Kennedys' claims are preempted under § 360k(a). This appeal timely followed.

On appeal, the Kennedys make two arguments. First, they contend that § 360k(a) only preempts state law to the extent that state law establishes additional or divergent requirements for a *particular* medical device. Because neither the state common law nor the FDA has established any *specific* requirements unique to Zyderm, the Kennedys assert, their state common law claims are not preempted. In addition, the Kennedys assert that the state common law, pursuant to which they are suing, is a law of general applicability and therefore specifically not preempted by the MDA.

## II. DISCUSSION

### I. *Standard of Review*

This court reviews the district court's grant of summary judgment on a pure question of law, in which there are no disputed facts, *de novo*. *Turner v. Prod*, 707 F.2d 1109, 1114 (9th Cir.1983).

### II. *History of The MDA*

The MDA was enacted largely in response to the public outcry following the injuries suffered in the 1960s and early 1970s by women using the Dalkon Shield contraceptive device. *See Ministry of Health v. Shiley*, 858 F.Supp. 1426, 1434 (C.D.Cal.1994). Federal investigations in the wake of the Dalkon Shield injuries confirmed that the "pace of the [medical device] industry far exceeded the FDA's ability to control it." *Id.* at 1434 (quoting Susan Barlett Foote, *Loops and Loopholes: Hazardous Device Regulation Under the 1976 Medical Device Amendments to the Food, Drug and Cosmetic Act*, 7 Ecology L.Q. 101, 102–103 (1978)).

Congress subsequently passed the MDA in order "to assure the reasonable safety and effectiveness of medical devices intended for human use." H.Conf.Rep. No. 1090, 94th Cong., 2d Sess. *reprinted in* 1976 U.S.Code Cong. & Admin.News 1070, 1103. The MDA gives the FDA broad powers to classify and regulate medical devices. Under the MDA, the FDA must assign a medical device to one of three statutorily delineated categories. Class I devices are those devices which pose little or no threat to public health. They are subject to only general requirements concerned with their manufacture. Tongue depressors are one example of a Class I medical device. *See* 21 U.S.C. § 360c(a)(1)(A); 21 C.F.R. § 860.3(c)(1). Class II devices include items such as tampons and oxygen masks. Use of Class II devices involves some risk of injury and, as a result, the FDA establishes performance standards, postmarket surveillance programs and guidelines for their use. *See* 21 U.S.C. § 360c(a)(1)(B); 21 C.F.R. § 860.3(c)(2).

Class III devices are those devices which are implanted in the body or which pose a potentially unreasonable risk of injury. *See* 21 U.S.C. § 360c(a)(1)(C); 21 C.F.R. § 860.3(c)(3). They include Zyderm, as well as pacemakers, heart valves and replacement joints. Because of their inherent dangerousness, Class III devices are subject to the most stringent FDA regulation. All Class III devices are required to obtain premarket approval prior to being released for sale and use. 21 U.S.C. § 360e; 21 C.F.R. § 814.1(c).

In order to attain premarket approval, the manufacturer of a Class III device must submit all of its information on any investigations concerning the device's safety or effectiveness, a statement of the intended use of the product, a description of the expected manufacturing process, and any other requested information to the FDA. 21 U.S.C. §§ 360e(c)(1)(A)–(G); 21 C.F.R.

§§ 814.20(b)(2)–(12). Prior to approval by the FDA, the existence of an application for approval may not be publicly disclosed unless it has previously been publicly disclosed or acknowledged. 21 C.F.R. § 814.9(b). There is no opportunity for public comment or for any public challenge to the information presented to the FDA by the device manufacturer.

### III. *General Preemption Principles*

The principle of federal preemption of state law derives from Article VI of the Constitution, the Supremacy Clause. Article VI establishes the laws of the United States as "the supreme Law of the Land ... any Thing in the constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2.

■ Federal law can preempt state law in one of two ways. Congress may either explicitly state its intent to preempt state law in the language of a statute or Congress may imply its intent to preempt through the structure and purpose of a statute. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Implicit preemption can itself take two forms. Congress may either occupy a field by passing a statutory scheme so extensive that it covers an entire legislative field or Congress may enact a federal law which makes compliance with a state law impossible. *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

■ Where Congress has made its intent to preempt explicit in a statute, the Supreme Court has held that:

'there is no need to infer congressional intent to preempt state laws from the substantive provisions' of the legislation ... Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted.

*Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517–18, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (citations omitted). Therefore, the question to be answered in instances of express preemption is the *extent* to which Congress intended to preempt state law.

Regardless of the form preemption takes, the Supreme Court has consistently imposed a strong presumption against preemption.

Consideration of issues arising under the Supremacy Clause 'start with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'

*Cipollone,* 505 U.S. at 515–16, 112 S.Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). In its most recent decision on preemption, the Supreme Court held that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (1988 ed. and Supp. V), did not preempt a New York law requiring hospitals to add "surcharges on bills of patients whose commercial insurance coverage is purchased by employee health-care plans governed by ERISA, and [requiring] ... surcharges on HMOs, insofar as their membership fees are paid by an ERISA plan." *N.Y. Conference of Blue Cross v. Travelers Ins.,* —— U.S. ——, ——–——, 115 S.Ct. 1671, 1673–74, 131 L.Ed.2d 695 (1995). In *N.Y. Conference,* the Court reaffirmed that even a preemption provision in an expansive statutory scheme such as ERISA must be read narrowly, especially in areas of historic state concern such as health and safety. *Id.* at ——, 115 S.Ct. at 1676.

Similarly, in *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Court applied the presumption against preemption to uphold a state punitive damage award in the face of comprehensive federal legislation addressing nuclear safety. In *Silkwood,* the Court noted the tension its holding created between federal legislation to regulate nuclear safety and a state's ability to impose its own laws of liability; however, the Court was reluctant to find complete preemption in the face of congressional silence with regard to tort remedies. "It is difficult to believe that Congress would, without comment, remove all means of recourse for those injured by illegal conduct." *Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623.

## IV. *Preemption Under the MDA*

■ Congress explicitly provided for the preemption of state law under the MDA. Section 360k(a) establishes that:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). Some courts have read the language as creating an expansive federal preemption of state law. The Eighth Circuit, for example, has read the language of § 360k(a) to preempt *any* state tort claims dealing with safety, effectiveness or any other aspect governed by the FDA's premarket approval process.[1] *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1169 (8th Cir.1994).

However, the statutory language of § 360k(a) does not create the broad, sweeping preemption found by the Eighth Circuit. Reading § 360k(a)(1) broadly requires recognizing that *any* state law is, by definition, a law "in addition to" federal law. A broad reading of § 360k(a) thus renders the "different from" language meaningless and forces a strained reading of the statute. Similarly, in *N.Y. Conference*, the Supreme Court held that the term "relate[s] to" is potentially unbounded if interpreted broadly. If it "were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'" *N.Y. Conference*, —— U.S. at ——, 115 S.Ct. at 1677 (citations omitted). Therefore, the Court held that in order to define "relate[s] to" in a meaningful manner, a court must look to the purpose and effects of the state law in issue. *Id.* at ——, 115 S.Ct. at 1676.

■ We must address two threshold questions: (1) what constitutes a "State ... requirement" and (2) what constitutes a "requirement" under the MDA. *Lohr v. Medtronic*, 56 F.3d 1335, 1342 (11th Cir.1995). Congress has not addressed these precise questions. Therefore, we must look to the FDA's understanding of the scope of the MDA's statutory preemption provision since the FDA is the agency charged by Congress with implementing the MDA. An agency's interpretation of its own statute is controlling so long as not contrary to Congress' intent. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). As long as the FDA has propounded any "reasonable interpretation" of the provision, this Court has no cause to overturn the agency's interpretation in favor of its own. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

The FDA interprets § 360k(a) in 21 C.F.R. § 808.1(d). Section 808.1(d) provides:

State or local requirements are preempted *only* when the Food and Drug Administration has established *specific* counterpart regulations or there are other *specific* requirements applicable to a *particular* device under the act, thereby making any existing divergent State or local requirements applicable to the device different from or in addition to, the *specific* Food and Drug Administration requirements

. . . . .

21 C.F.R. § 808.1(d) (emphasis added). Section 808.1(d) goes on to delineate other state and local requirements which affect medical devices, but which are not preempted by § 360k(a):

(1) Section 521(a) does not preempt State or local requirements of *general applicability* where the purpose of the requirement relates either to other products in addition to devices ... or to unfair trade

---

1. In *Anguiano v. E.I. Du Pont De Nemours & Co., Inc.*, 44 F.3d 806 (9th Cir.1995), we held that state tort law was not preempted with respect to the Class II device in question. *Id.* at 810. Our reason was that there were no federal requirements applicable to the device. *Id.* In dictum, we expressed the view that in promulgating the MDA, Congress intended to preempt state tort law. *Id.* at 809. It is obvious from what we held in *Anguiano* that the dictum was either overbroad or not intended to be taken literally. In any event, upon careful analysis, we believe that the dictum was not correct.

practices in which the requirements are not limited to devices ...

(6)(ii) Generally, section 521(a) does not preempt a State or local requirement prohibiting the manufacture of adulterated or misbranded devices ...

21 C.F.R. § 808.1(d)(1)–(9) (emphasis added). Section 808.1(d) explicitly requires that state or local requirements *only* be preempted where there exist *specific* counterpart requirements or regulations applicable to a *particular* device.

■■■ Defendants contend and the district court agreed that the premarket approval process required by the FDA for Class III devices constitutes a *specific* federal requirement which preempts state common law claims. Other courts addressing the question of the preemptive scope of the MDA have devoted considerable analysis to the issue of whether the premarket approval process is specific enough to satisfy the FDA's narrow preemption rule. *See e.g., Martello,* 42 F.3d at 1169; *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421–22 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). Courts have also expostulated on whether state common law claims are of specific enough applicability to escape the FDA's pronouncement that laws of general applicability are not preempted. *See e.g., Michael v. Shiley,* 46 F.3d 1316, 1323 (3rd Cir.1995); *King v. Collagen Corp.,* 983 F.2d 1130, 1136 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

While most courts have found that at least some, if not all, state common law claims are preempted by the MDA, these courts have failed to devote any attention to the meaning of "general applicability" within the context of the MDA and its accompanying regulations. They have also failed to consider the question of whether Class III devices as a group can constitute a *"particular* device" within the FDA's understanding of that term. *See e.g., King,* 983 F.2d at 1139; *Stamps,* 984 F.2d at 1420–21; *Martello,* 42 F.3d at 1169.

In addition, these courts have ignored the existence of other regulations promulgated by the FDA like § 808.1(d)(6)(ii) which specifically provides that a state or local requirement prohibiting the manufacture of adulterated or misbranded devices, a subject of the FDA premarket approval process, is not preempted unless it is interpreted or enforced by the state or local government in such a manner as to create a "substantive requirement for a *specific* device." 21 C.F.R. § 808.1(d)(6)(ii).

The reasoning of courts which have found that the premarket approval process preempts state law claims stands in sharp contrast to the analysis of Class II devices. In Class II cases courts have consistently focussed both on the specificity of the federal requirement and the particularity of the device. For example, in *Moore v. Kimberly–Clark Corp.,* 867 F.2d 243, 246 (5th Cir.), *reh'g denied,* 873 F.2d 297 (1989), the court refused to preempt state laws relating to the design, construction, and composition of tampons because the only federal regulations applying to tampons, as a *particular* device, were labeling and warning requirements. *See also Anguiano v. E.I. DuPont de Nemours & Co.,* 44 F.3d 806, 810 (9th Cir.1995) (holding that "[b]ecause the FDA ha[d] not promulgated specific regulations regarding [the product], the MDA [did] not preempt Anguiano's state law claims"). Thus, other courts have required less overall specificity under § 808.1(d) for Class III devices than for Class II devices. They have required particularity in the preemption analysis of Class II devices, but have ignored the word "particular" in the preemption analysis of Class III devices.

Such distinctions between Class II and Class III devices make little sense.[2] Congress enacted the MDA to ensure that safe and effective medical devices were introduced into the market. H.R.Conf.Rep. No. 1090. There is no reason for a court's preemption analysis to change depending on the

---

**2.** Other courts have suggested that preemption is more applicable to Class III devices because the level of regulatory control is greater for Class III devices than for Class II devices. *See, e.g., Martello* 42 F.3d at 1168. While it is true that Class II devices are subject to specific performance standards only *if* the FDA deems them a sufficient health hazard whereas all Class III devices are subjected to a stringent "premarket approval process," this distinction in no way changes the fact that the MDA does not preempt claims based upon state common law of general applicability.

class of device in issue. In implementing the MDA, the FDA has explicitly interpreted § 360k(a) to exempt certain state laws which affect medical devices. As long as the FDA's interpretation of the MDA's preemption provision does not contravene congressional intent, the FDA's interpretation is controlling. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

Section 808.1(d)(1) provides that the MDA does not preempt laws of general applicability. State common law is a law of general applicability. Although specific state common laws may have come into existence in response to a harm created by a particular device, state common law does not relate solely to or regulate any *particular* device or product to the exclusion of other devices or products. Courts which have found state common law actions to be preempted have generally relied on the Supreme Court plurality's conclusion in *Cipollone* that state common law can exert a regulatory effect on business. *Cipollone,* 505 U.S. at 521–22, 112 S.Ct. at 2620 (citing *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959)). *See e.g. Stamps,* 984 F.2d at 1422; *King,* 983 F.2d at 1134 (citing *San Diego Building Trades* ).

However, the fact that state common law *may* have an indirect regulatory effect is not dispositive as to whether it qualifies as a *specific* requirement applicable to a *particular* device. Unlike positive state enactments, common law imposes only an indirect effect on manufacturers. Defendants in common law damages actions retain the freedom to choose their own response to the legal challenges they face. For example, manufacturers facing common law challenges retain the discretion whether to alter their product or whether to bear the cost of any lawsuits that might result from their decision, whereas, manufacturers bound by positive state enactments are required to conform their product to the law. *See Cipollone,* 505 U.S. at 534–36, 112 S.Ct. at 2627 (Blackmun, J., dissenting). The potential for state common law to create an indirect regulatory effect is insufficient to alter the fact that state common law is a law of general applicability and therefore cannot qualify as a *specific* requirement which may be preempted by the MDA.

In addition, it makes little sense to hold that the FDA's premarket approval process qualifies as a *"specific* requirement applicable to a *particular* device." 21 C.F.R. § 808.1(d) (emphasis added). *All* Class III devices are required to obtain premarket approval before being sold in interstate commerce. 21 U.S.C. § 360e; 21 C.F.R. § 814.1. The fact that the premarket approval process involves specific requirements, *see* 21 C.F.R. § 814, 820, must not be confused with the premarket approval requirement itself acting as a *specific* requirement. The result of holding that the premarket approval process is a "specific requirement applicable to a particular device" is the preemption of claims which, if barred, leave injured plaintiffs without any remedy in state or federal law. *See Michael,* 46 F.3d at 1320 (noting that the MDA does not oblige any Class III manufacturer or distributor to compensate a person injured by a Class III device for their medical expenses or their pain and suffering).

As the Supreme Court held in *Silkwood,* it is incredible to believe that Congress would, without comment, void all means of relief for those injured by illegal conduct. *Silkwood,* 464 U.S. at 251, 104 S.Ct. at 623. State common law damages actions guarantee people who are injured by a manufacturer the opportunity to be compensated for their harm. State regulation of manufacturers directly governs their actions in releasing their goods into the market. Thus, state common law serves a different purpose than state regulation and is unlikely to have been the target of congressional attempts to promote the introduction of safe medical devices onto the market or even to curb dual regulation of the medical devices industry. Reading the MDA's preemption provision in the manner advocated by the defendant would result in consumers of Class III devices being left without recourse for any harm suffered. Such a result flies in the face of the congressional intent behind the MDA legislation: consumer protection. 43 Fed.Reg. 18,663 (May 2, 1978).

The federal law requiring the premarket approval of Class III devices was not enacted in order to free manufacturers from the everyday burdens of the marketplace after they

are permitted to enter it. Premarket approval is supposed to benefit consumers, not create a rose garden, free from liability, for manufacturers. Courts which have held to the contrary have done so in contravention of the FDA's regulations and statements concerning the preemptive scope of the MDA. The FDA's determination that § 360k(a) must be read narrowly establishes a plausible interpretation of the statute and comports with the congressional intent behind the legislation. Absent a compelling reason to overturn the FDA's interpretation of the legislation, we must adopt that interpretation and reverse the district court's grant of summary judgment.

REVERSED AND REMANDED.

REINHARDT, Circuit Judge, concurring:

I join fully in Judge Ferguson's opinion for the court. I write separately to clarify further the meaning of the word "requirement" as it is used in 21 U.S.C. § 360k(a). The Medical Device Amendments of 1976 (the "MDA") preemption provision states:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any *requirement*—

(1) which is different from, or in addition to, any *requirement* applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a *re-*

*quirement* applicable to the device under this chapter.

21 U.S.C. § 360k(a).

The first reference to "requirement" is to requirements imposed by states or local entities, while the second and third references are to federal requirements imposed under the MDA. It is the meaning of the first "requirement"—state or local requirements applicable to medical devices—that is at issue here.[1]

Some courts have concluded that the term "requirement" as it relates to state or local regulation includes state common law of general applicability. These courts have either accepted that view without explanation, relied on a plurality holding endorsing the proposition in a different context in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), or read 21 C.F.R. § 808.1(b) in isolation from the rest of § 808.1.[2] As discussed in Judge Ferguson's opinion for the court, the dicta and occasional holdings of the courts that have concluded that the MDA preempts state common law ignore the controlling interpretation of § 360k(a) adopted by the FDA, the federal agency charged with implementing the Medical Device Amendments.

The term "requirement" is not self-defining, and Congress did not provide any definition of the term as it is used in relation to the actions of a state (the first reference) or in

---

1. The Eleventh Circuit erroneously suggests that this court understands the first reference to "requirement" to include general state tort law. *Lohr v. Medtronic, Inc.*, 56 F.3d 1335, 1342 (11th Cir.1995). The *Lohr* court's suggestion is based on dicta in *Anguiano v. E.I. Du Pont De Nemours & Co.*, 44 F.3d 806, 809 (9th Cir.1995). In *Anguiano*, we actually considered the second and third references to "requirement" (the federal references) in § 360k(a), and held that the plaintiffs' state claims were not preempted. We concluded that the *federal* controls applicable to the Class II device in question were too insubstantial to constitute a "requirement" under the MDA. *Id.* at 810. Class III devices were not at issue in that case and our speculation as to how Class III devices might be treated under the statute was just that—speculation. So, too, were any observations regarding the scope or preemptive effect of the *first* reference to "requirement," the requirement at issue here.

2. See, *e.g., Gile v. Optical Radiation Corp.*, 22 F.3d 540, 542 (3rd Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994) (declaring that the Supreme Court has clearly stated that the word "requirement," in the context of an express preemption provision, includes state law claims); *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1333 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992) (suggesting in dicta that § 360k(a) preempts state common law decisions); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1168 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995) (relying on phrase "whether established by statute, ordinance, regulation, or court decision" in 21 C.F.R. § 808.1(b) to conclude preemption extends to state tort actions); *Lohr*, 56 F.3d at 1342 (adopting the Seventh Circuit's reasoning and relying on the conclusions of other circuits that common law actions are state requirements within the meaning of § 360k(a)).

relation to federal actions (the second and third references). Rather, Congress left to the FDA the task of adopting implementing regulations defining "requirement," and explaining the operation of other provisions of the MDA. The controlling interpretations of the term "requirement" are found in 21 C.F.R. § 808.1. Read in its entirety, section 808.1 clearly provides that § 306k(a) preempts only state and local requirements the terms of which are *specifically* "applicable to medical devices," and that it does *not* preempt state and local requirements "of general applicability;" i.e., state and local requirements the purpose of which relates "to other products in addition to [medical] devices." 21 C.F.R. § 808.1(a); 21 C.F.R. § 808.1(d)(1). In other words, the FDA's implementing regulations define and limit the term (state) "requirement." Under those regulations, what is preempted by the MDA are state and local *medical device* requirements, not state and local general laws, whether tort or contract, common or statutory. 21 C.F.R. § 808.1(d)(1). In short, § 808.1 makes it clear that general state tort law is *not* preempted by the MDA.

A few courts have pointed to the inclusion of the term "court decisions" in 21 C.F.R. § 808.1(b) as evidence that state tort law claims are generally preempted. *See, e.g., Gile v. Optical Radiation Corp.,* 22 F.3d 540, 544 n. 3 (3rd Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994). They argue that the inclusion of "court decisions" demonstrates that all state common law is preempted. The argument is a non sequitur. The court decisions that are preempted are only those that involve state

requirements of specific rather than general applicability. The fact that a court decision involves a medical device is not determinative of whether that court decision constitutes a preempted state requirement; what is determinative is whether the court decision implements a principle of general tort law or is based on a rule or regulation aimed specifically at medical devices. A contrary interpretation would bring § 808.1(b) into direct conflict with § 808.1(d)(1). There is no reason for such a conflict, since the two provisions, read in context, can easily be reconciled.[3]

Section 808.1(b) sets forth the "general rule" that states may not establish or maintain "requirements" with respect to medical devices that differ from the federal rules governing these devices. As noted *supra,* the term "requirement" is defined as including "court decisions." We can assume for purposes of this decision that were we to read § 808.1(b) in isolation, there might be some ambiguity with respect to the latter term, and that it could be read to refer either to all court decisions or only to those court decisions that adopt special rules applicable to medical devices. However, when read together with § 808.1(d)(1), any ambiguity disappears.

In § 808.1(d)(1), which, of course, appears *after* § 808.1(b), the scope of the earlier section is expressly clarified and limited. Section 808.1(d)(1) specifically provides that "requirements" involving laws of general applicability, are *not* preempted. Since, under § 808.1(b), "requirements" includes "court decisions," "court decisions" must be read as

---

**3.** Appellate courts have generally ignored 21 C.F.R. § 808.1(d)(1). Only a few circuit courts even bother to mention the subsection. *See Michael v. Shiley, Inc.,* 46 F.3d 1316, 1323 n. 4 (3rd Cir.1995) (noting plaintiff's argument based on the "general applicability" language in § 808.1(d)(1) but expressing no view on the effect of § 808.1(d)(1) "because Shiley disclaimed all implied warranties as it was entitled to do under the Code"); *Gile,* 22 F.3d at 543 n. 2 (ignoring the "general applicability" language and seemingly relying on the fact that neither the phrases "state tort claim" nor "common law claim" are listed in 21 C.F.R. § 808.1(d)); *King v. Collagen Corp.,* 983 F.2d 1130, 1139 (1st Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) (Aldrich, J., concurring) (offer-

ing the proposition that "When a statute is clear the agency interpretation must give way" as explanation for why § 808.1(d)(1) does not conflict with the court's decision). District courts have addressed § 808.1(d)(1) more often than appellate courts with varied conclusions. *Compare Mitchell v. Collagen Corp.,* 870 F.Supp. 885 (N.D.Ind.1994) (rejecting plaintiffs contention, based upon § 808.1(d), "that state tort laws of general applicability (i.e., not applicable only to medical devices) are not preempted") with *Ministry of Health v. Shiley,* 858 F.Supp. 1426, 1435 (C.D.Cal.1994) (relying on the "general applicability" language of § 808.1(d)(1) and Advisory Opinions issued by the Office of the Chief Counsel for the FDA to conclude state tort claims are not subject to blanket preemption).

*not* including decisions involving rules of general applicability. Any other reading would make the scope of the term "court decisions" far broader than, and entirely inconsistent with, the other terms (i.e. statute, ordinance, and regulation) which are included within the definition of "requirement." In short, the inclusion of the term "court decision" in § 808.1(b) cannot serve to modify the provision in § 808.1(d) that limits the term "requirements" to those provisions applicable expressly to medical devices. If for no other reason than the order in which they appear, it is § 808.1(d) that specifically limits and explains the scope of the term "court decision," as used in § 808.1(b), not vice-versa.

To summarize, if a state common law requirement is not specifically directed at medical devices, but affects such devices in the same manner as it affects all other products, a claim based upon that state law requirement is not preempted. Accordingly, generally applicable state common law, including tort law, is not preempted by § 360k(a).