COMMITTEE OF DENTAL AMALGAM MANUFACTURERS AND DISTRIBUTORS; Dentsply International, Inc., Plaintiffs–Appellees,

v.

James STRATTON, Dr., Interim Director of the Office of Environmental Health Hazard Assessment; Daniel E. Lungren, Attorney General of the State of California, Defendants–Appellants,

and

Environmental Law Foundation, Intervenor–Appellant.

Nos. 94–56508, 94–56512.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1996.

Decided Aug. 5, 1996.

Susan S. Fiering, Deputy Attorney General, Oakland, California, for defendants-appellants.

James Wheaton, Environmental Law Foundation, Oakland, California, for intervenor-appellant.

Stanley W. Landfair, McKenna & Cuneo, San Diego, California, for plaintiffs-appellees.

Before: PREGERSON, T.G. NELSON, Circuit Judges, and LYNCH, District Judge.[*]

PREGERSON, Circuit Judge:

The defendants, Dr. James Stratton, Acting Director of the California Office of Health Hazard Assessment, and Dan Lungren, the Attorney General of the State of California (collectively the "State"), and the intervening party, Environmental Law Foundation ("ELF"), appeal the district court's grant of summary judgment in favor of the plaintiffs, Committee of Dental Amalgam Alloy Manufacturers and Distributors and Dentsply International, Inc. (collectively the "manufacturers"). The district court held that, as applied to dental amalgam, the Medical Device Amendments to the federal Food, Drug and Cosmetics Act ("MDA"), 21 U.S.C. § 321–394, preempt California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal.Health and Safety Code §§ 25249.5–25249.13. The district court had jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction under 28 U.S.C. § 1291. We reverse.

## BACKGROUND

Proposition 65 was passed by the voters of California in 1986. Proposition 65 mandates that the public be informed about products that pose a health risk. Proposition 65 specifically states:

No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.

Cal.Health & Safety Code § 25249.6.

Similarly, Congress enacted the MDA "to assure the reasonable safety and effectiveness of medical devices intended for human use." *Kennedy v. Collagen Corp.*, 67 F.3d 1453, 1455 (9th Cir.1995) (citing H.Conf.Rep. No. 1090, 94th Cong., 2d Sess. *reprinted in* 1976 U.S.Code Cong. & Admin.News 1070, 1103). Manufacturers of medical devices are required to register each medical device with the federal Food and Drug Administration ("FDA") prior to commencing manufacture. 21 U.S.C. § 360(c). Failure to register a device is punishable by fines, penalties, and/or imprisonment. 21 U.S.C. § 333.

The MDA grants the FDA broad authority to regulate medical devices. 21 U.S.C. § 371(a). Under the MDA, the FDA must classify medical devices into three categories, according to the level of regulatory control the FDA determines is necessary to ensure the safety and effectiveness of each device. *See* 21 U.S.C. § 360c. Medical devices which pose little or no threat to public health are classified as Class 1 devices and are subject to only "general controls" related to their manufacture. *See* 21 U.S.C. § 360c(a)(1)(A); 21 C.F.R. § 860.3(c)(1). Medical devices which involve some risk of injury are classified as Class II devices and are subject to "special controls," including performance standards, use guidelines, and post-market surveillance programs. *See* 21 U.S.C. § 360c(a)(1)(B); 21 C.F.R. § 860.3(c)(2). Medical devices that pose a high risk of injury or that are implanted in the body are classified as Class III devices and must receive premarket approval from the FDA. *See* 21 U.S.C. §§ 360c(a)(1)(C), 360e; 21 C.F.R. §§ 814.1(c), 860.3(c)(3).

Dental amalgam is used by dentists to restore teeth. On July 1, 1990, pursuant to

[*] The Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation.

Proposition 65, the State of California listed mercury as a chemical known to cause reproductive harm. 22 Cal.Code of Regulations § 12000(c). As a result, consumer warnings for dental amalgam are now required. This requirement is satisfied through "general methods such as labels on consumer products, inclusion of notices in mailings to water customers, posting of notices, placing notices in public news media, and the like, provided that the warning accomplished is clear and reasonable." Cal.Health & Safety Code § 25249.11(f).

On September 21, 1993, the manufacturers filed this action seeking a judgment declaring Proposition 65 preempted by the MDA as it applied to dental amalgam. On November 5, 1993, the State filed a motion to dismiss or, in the alternative, for summary judgment. The manufacturers responded by also filing a motion for summary judgment. On August 25, 1994, the district court denied the State's motion and granted the manufacturers' motion for summary judgment on preemption grounds. The district court entered judgment in the manufacturers' favor on September 27, 1994.

Both the State and ELF timely filed separate notices of appeal. On October 11, 1994, the State initiated its appeal. ELF initiated its appeal on October 18, 1994. Both appeals were consolidated on January 6, 1995.

## DISCUSSION

### I. STANDARD OF REVIEW

We review de novo "the district court's grant of summary judgment on a pure question of law, in which there are no disputed facts." *Kennedy,* 67 F.3d at 1455 (citing *Turner v. Prod,* 707 F.2d 1109, 1114 (9th Cir.1983)). Further, where, as here, the validity of a statute is being challenged, there must be a showing "that *no* set of circumstances exists under which the ... [statute] would be valid." *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby* ("*Allenby*"), 958 F.2d 941, 943 (9th Cir.1992) (" 'the fact that the ... Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid' ") (quoting *United States v. Salerno,* 481 U.S.

739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)). Thus, to find that Proposition 65 is preempted by the MDA, we "must determine that *all* possible consumer product warnings that would satisfy Proposition 65 conflict with provisions of the" MDA. *Id.* (emphasis added).

### II. WHETHER DENTAL MERCURY IS A "MEDICAL DEVICE" UNDER THE MDA

The district court assumed that dental amalgam is regulated by the MDA as a "medical device" because its two component parts—dental mercury and amalgam alloy—are classified by the MDA. As the district court explained:

The court need not consider whether the FDA is treating dental amalgam as a device, whether it believes it is regulating dental amalgam, or whether it intends to regulate dental amalgam. The court finds, as a matter of logic, that any regulation of dental mercury will, ipso facto, regulate any product containing dental mercury, including dental amalgam. Therefore, this court's ruling extends to dental amalgam. The court need not reach amalgam alloy as Proposition 65 does not regulate it.

Thus, as a threshold matter, we must decide whether the district court was correct in holding that the MDA applied to dental amalgam. Congress defined the term "medical device" very broadly as:

[a]n instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article including any component, parts or accessory, which is—

(1) recognized in the official National Formulary, or the United States Phamacopeia, or any supplement to them,

(2) *intended for use* in the diagnosis of disease or other conditions, or *in the cure, mitigation, treatment, or prevention of disease, in man* or other animals, or

(3) intended to affect the structure or any function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or

other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes. 21 U.S.C. § 321(h) (emphasis added).

■ Based on this broad definition of "medical device," we hold that dental amalgam does fall within the reach of the MDA. Dental amalgam is used in the treatment and prevention of tooth decay. Further, the FDA has already classified the component parts of dental amalgam. Dental mercury is classified as a Class 1 device. 21 C.F.R. § 872.3700. Amalgam alloy is classified as a Class II device. 21 C.F.R. § 872.3050. Thus, there can be no question that any regulation of dental mercury or amalgam alloy under the MDA also applies to dental amalgam.

## III. GENERAL PREEMPTION PRINCIPLES

■ There is a strong presumption against finding that state law is preempted by federal law. *Allenby*, 958 F.2d at 943. As the Supreme Court recently stated:

> [B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated ... in a field which the States have traditionally occupied," ... we "start with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress."

*Medtronic, Inc. v. Lohr*, — U.S. —, —, 116 S.Ct. 2240, 2249, 135 L.Ed.2d 700 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Thus, "States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Id.* at —, 116 S.Ct. at 2245 (citations and quotations omitted).

■ In addition, a court's analysis as to the scope of preemption is guided by Congress's purpose in enacting the statute at issue. *Id.* at —, 116 S.Ct. at 2250. Congress's purpose "is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it" as well as from "the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers and the law." *Id.* (citations omitted).

## IV. PREEMPTION UNDER THE MDA

Congress included an explicit preemption provision in the MDA. Section 360k(a) provides:

> [N]o state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) *which is different from, or in addition to,* any requirement applicable under this chapter to the device, and
>
> (2) *which relates to the safety or effectiveness of the device* or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (emphasis added).

In *Medtronic v. Lohr*, the Supreme Court rejected a broad construction of this preemption provision. In *Medtronic*, the manufacturer of a Class III device was sued under state law for damages caused by a defective pacemaker. The manufacturer argued that plaintiff's state causes of action were preempted by the MDA because they qualified as state "requirement[s] ... different from ... [and] in addition to" the federal standards and "requirements" promulgated by the FDA. *Id.* at —, 116 S.Ct. at 2250.

The Supreme Court found the manufacturer's arguments "not only unpersuasive ... [but also] implausible." *Id.* As the Supreme Court explained:

> Under Medtronic's view of the statute, Congress effectively precluded state courts from affording state consumers any protection from injuries resulting from a defective medical device. Moreover, because there is no explicit private cause of action against manufacturers contained in the MDA, and no suggestion that the Act created an implied private right of action, Congress would have barred most, if not all, relief for persons injured by defective

medical devices.... Medtronic's construction of § 360k would therefore have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation.... It is, to say the least, "difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct," ... and it would take language much plainer than the text of § 360k to convince us that Congress intended that result.

*Id.*

■ Based on this reasoning, we hold that our prior decisions narrowly construing the MDA's preemption clause are consistent with *Medtronic v. Lohr.* Before *Medtronic,* we already had rejected a broad construction of the MDA preemption clause. *See Kennedy v. Collagen,* 67 F.3d 1453, 1457 (9th Cir. 1995); *Anguiano v. E.I. DuPont De Nemours & Co.,* 44 F.3d 806, 809 (9th Cir.1995). As we explained in *Kennedy:*

> [T]he statutory language of § 360k(a) does not create the broad, sweeping preemption found by ... [other circuits]. Reading 360k(a)(1) broadly requires recognizing that *any* state law is, by definition, a law "in addition to" federal law. A broad reading of § 360k(a) thus renders the "different from" language meaningless and forces a strained reading of the statute.

*Id.*

Further, in determining what kind of federal "requirement" and what kind of state "requirement" trigger preemption, the Supreme Court in *Medtronic* deferred to the FDA's regulation that narrowly construes the MDA's preemption clause. —— U.S. ——,——––——, 116 S.Ct. 2240, 2260–63, 135 L.Ed.2d 700. Section 808.1(d) provides, in relevant part:

> State or local requirements are preempted *only* when the Food and Drug Administration has established *specific counterpart* regulations or there are other *specific* requirements applicable to a *particular* de-

vice under the act, thereby making any existing divergent State, or local requirements applicable to the device different from or in addition, the *specific* Food and Drug Administration requirement....

21 C.F.R. § 808.1(d) (emphasis added).

Based on this FDA regulation, a state or local "requirement" is preempted by the MDA only if *specific* counterpart requirements or regulations that are applicable to a *particular* device exist. As the Supreme Court explained:

> [P]reemption under the MDA does not arise directly as a result of the enactment of a [state] statute; rather, in most cases a state law will be preempted only to the extent that the FDA has promulgated a relevant federal "requirement."

—— U.S. ——, ——, 116 S.Ct. 2240, 2255, 135 L.Ed.2d 700. *See also Anguiano v. E.I. DuPont De Nemours & Co.,* 44 F.3d 806, 809 (9th Cir.1995) ("the scope of preemption is limited to instances where there are *specific* FDA requirements applicable to a *particular* device") (emphasis added).[1]

■ In addition, the Supreme Court in *Medtronic* specifically approved that part of the FDA regulation that provides that "[s]ection 521(a) does not preempt State and local requirements of *general applicability* where the purpose of the requirement relates either to other products in addition to devices ... or to unfair trade practices in which the requirements are not limited to devices." 21 C.F.R. § 808.1(d). As the Supreme Court explained, the word "[r]equirement appears to presume that the State is imposing a *specific* duty upon the manufacturer." —— U.S. ——, ——, 116 S.Ct. 2240, 2251, 135 L.Ed.2d 700 (emphasis added). Thus, a state law of general applicability will be preempted only if it has "the effect of establishing a substantive requirement for a specific device." *Id.* at ——, 116 S.Ct. at 2262.

## V. WHETHER PROPOSITION 65 IS PREEMPTED BY THE MDA

The district court held that, even though the FDA has not established "specific" regu-

---

1. In 1990 and 1992, Congress amended the MDA while leaving 21 C.F.R. § 808.1(d) intact. If Congress disagreed with the FDA's interpretation of the MDA's preemption clause, Congress would have amended the MDA at that time. Because Congress did not do so, it is fair to assume that the FDA's interpretation of the MDA's preemption clause is consistent with Congressional intent.

lations relating to dental amalgam, the MDA still preempts Proposition 65. First, the district court held that 21 C.F.R. § 801.109, the FDA regulation describing the manufacturing and labeling requirements, is "specific" enough to trigger preemption. Second, the district court held that the FDA's alleged refusal to impose reproductive toxicity requirements on dental mercury is by itself preemptive.

The district court was wrong on both counts. In *Medtronic,* the Supreme Court held that the FDA's manufacturing and labeling requirements were *not* "specific" enough to preempt state law. — U.S. —, —, 116 S.Ct. 2240, 2263, 135 L.Ed.2d 700. As the Supreme Court explained:

> The generality of those requirements make this quite unlike a case in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers. Rather, the federal requirements reflect important but entirely generic concerns about device regulation generally, not the sort of concerns regarding a specific device or field of device regulation which the statute or regulations were designed to protect from potentially contradictory state requirements.

— U.S. —, —, 116 S.Ct. 2240, 2257, 135 L.Ed.2d 700.

■ Further, Proposition 65 is a state law of general applicability which was *not* enacted "with respect to" medical devices. Proposition 65 applies to *all* products and services that pose a health risk to the public. Except for identifying chemicals known to pose a health risk, Proposition 65 is not directed at any product or industry. Nor has the State of California adopted any *specific* regulation or requirement that relates to dental amalgam. The State of California has listed mercury as a product which causes reproductive harm. As a result, consumer warnings for dental amalgam are now required.

Thus, we hold that the consumer warning requirement under California's Proposition 65 is not "specific" enough to trigger preemption because it is "not the kind[ ] of requirement[ ] that Congress and the FDA feared would impede the ability of federal regulators to implement and enforce specific federal requirements." — U.S. —, —, 116 S.Ct. 2240, 2257, 135 L.Ed.2d 700. As the Supreme Court explained in *Medtronic:*

> General obligations are not more a threat to federal requirements than would be a state-law duty to comply with local fire prevention regulations and zoning codes, or to use due care in training and supervision of a workforce. These state requirements therefore escape preemption, not because the source of the duty is a judge-made common-law rule, but rather because their generality leaves them outside the category of requirements that § 360k envisioned to be "with respect to" specific devices.

*Id.*

■ We also reject the district court's holding that the FDA's *failure* to impose a warning requirement on dental amalgam is by itself preemptive. Inherent in the term "requirement" is the idea that there be a positive enactment from the FDA before preemption can be triggered. As the Supreme Court explained in *Medtronic:*

> [T]he word ["requirement"] is linked with language suggesting that its focus is device-specific enactments of positive law by legislative or administrative bodies.... For instance, subsections (a)(2) and (b) of the statute also refer to "requirements"— but those "requirements" refer only to statutory and regulatory law that exists pursuant to the MDA itself, suggesting that the pre-empted "requirements" established or continued by States also refer primarily to positive enactments of state law.

— U.S. —, —, 116 S.Ct. 2240, 2251, 135 L.Ed.2d 700.

To hold that inaction by the FDA is sufficient to trigger preemption would mean that manufacturers would be free to ignore state laws that are intended to protect consumers, during the period that the FDA is consider-

ing whether to issue specific regulations relating to particular products, or after the FDA, for whatever reason, has "decided," through inaction, not to regulate particular products. Such a holding would contradict Congress's stated intent of providing consumer protection from unsafe medical devices when it enacted the MDA. *See* 43 Fed.Reg. 18,663 (May 2, 1978).

### CONCLUSION

As set forth above, the district court's grant of summary judgment in favor of plaintiffs is reversed. We conclude that California's Proposition 65 is not preempted by the MDA.

REVERSED AND REMANDED.