**Thamar Santisteban CORTINA, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**GOYA FOODS, INC., Defendant.**

Case No. 14–CV–169–L (NLS).

United States District Court, S.D. California.

Signed March 19, 2015.

Courtland W. Creekmore, Matthew R. Bainer, Scott Edward Cole, Scott Cole & Associates, APC, Oakland, CA, Jack Fitzgerald, IV, The Law Office of Jack Fitzgerald, PC, Trevor Flynn, San Diego, CA, Lionel Z. Glancy, Marc L. Godino, Michael M. Goldberg, Glancy, Binkow & Goldberg, LLP, Vahn Alexander, The Alexander Firm P.C., A Professional Law Corporation, Los Angeles, CA, Amir David Benakote, Behram V. Parekh, Heather M. Baker Dobbs, Michael L. Kelly, Kirtland & Packard LLP, El Segundo, CA, for Plaintiffs.

James Patrick Muehlberger, Shook, Hardy & Bacon, Kansas City, MO, Naoki S. Kaneko, Paul B. La Scala, Shook Hardy and Bacon L.L.P., Irvine, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT [DOC. 31]**

M. JAMES LORENZ, District Judge.

This putative class action arises from Plaintiffs' allegations that Defendant manufactured, advertised, and sold mislabeled beverages. Defendant now moves to dismiss all claims in the First Amended Consolidated Complaint ("FACC") under Federal Rule of Civil Procedure 12(b)(6) and alternatively, to strike two of the three listed beverages from the FACC. Plaintiffs oppose.

For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss and **DENIES** Defendant's motion to strike.

## I. BACKGROUND

Defendant Goya Foods, Inc. ("Defendant" or "Goya") allegedly sells beverage products throughout the United States. (FACC ¶ 1, ECF No. 27.) Plaintiffs Thamar Cortina, Andrew Park, and Jilliann Perez ("Plaintiffs") allege on behalf of themselves and all others similarly situated, that Defendant failed to disclose to the consuming public material facts about the levels of 4–MeI, a potential carcinogen, that its beverages "Malta Goya," "Goya Sangria," and "Goya Ginger Beer" allegedly contain. (*Id.* ¶¶ 1, 4.) Further, Defendant allegedly represents these products as "nutritious" when they contain potentially harmful ingredients. (*Id.* ¶ 4.)

Plaintiffs allege nine causes of action in the FACC: (1) violation of California Unfair Competition Law ("UCL") (fraudulent prong); (2) violation of California False Advertising Law ("FAL"); (3) violation of California Consumers Legal Remedies Act ("CLRA"); (4) intentional misrepresentation; (5) negligent misrepresentation; (6) unjust enrichment; (7) breach of express warranty; (8) violation of California's Proposition 65; and (9) violation of California Unfair Competition Law ("UCL") (unlawful prong).

Defendant now moves to dismiss Plaintiffs' claims for failure to comply with Proposition 65 notice requirements. (Def's Mot. 9, ECF No. 31–1.) Defendant further maintains that because the Proposition 65 claim fails, the UCL, FAL, and CLRA claims also fail. (*See id.* 10.) Additionally, Defendant argues that Plaintiffs' claims are expressly preempted by federal law, and the primary jurisdiction doctrine bars Plaintiffs' claims. (*Id.* 12, 15.) Defendant suggests Plaintiffs have failed to meet the pleading requirements of Federal Rule of Civil Procedure 8. (*Id.* 19.) Defendant further claims Plaintiffs' breach of express warranty claim must be dismissed for failure to allege sufficient facts or comply with statutory notice requirements. (*Id.* 21.) Lastly, Defendant claims that unjust enrichment is not a standalone cause of action, so Plaintiffs' claim for the same should be dismissed. (*Id.* 22.) In the alternative, should any claims not be dismissed, Defendant moves to strike Plaintiffs' allegations concerning Goya Sangria and Goya Ginger Beer, for failure to meet the heightened pleading requirement for fraud-based claims. (*Id.* 23.)

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars–Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir.2007). Material allegations, even if doubtful in fact, are assumed to be true.

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

█ "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n. 1 (9th Cir.1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike are "generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D.Cal.2001). A federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. *Ollier v. Sweetwater Union High Sch. Dist.*, 735 F.Supp.2d 1222, 1223 (S.D.Cal. 2010). "Motions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation." *In re Facebook PPC Adver. Litig.*, 709 F.Supp.2d 762, 773 (N.D.Cal.2010). A court should not strike allegations supplying background or his-

torical material unless it is unduly prejudicial to the opponent. *See LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D.Cal.1992). When considering a motion to strike, the court "must view the pleadings in a light most favorable to the pleading party." *In re 2TheMart.com, Inc.*, 114 F.Supp.2d 955, 965 (C.D.Cal. 2000). Finally, Rule 12(f) "does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 971 (9th Cir.2010).

As noted above, a court may strike a pleading that is: (1) redundant, (2) immaterial, (3) impertinent, or (4) scandalous. Fed.R.Civ.P. 12(f). An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F.Supp.2d 1028, 1032 (C.D.Cal.2002) (internal citations and quotations omitted). An "impertinent" allegation is neither necessary nor relevant to the issues involved in the action. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (1993) (rev'd on other grounds). A scandalous pleading is one that "improperly casts a derogatory light on someone, most typically on a party to the action." *Aoki v. Benihana, Inc.*, 839 F.Supp.2d 759, 764 (D.Del.2012).

## III. DISCUSSION

### A. Defendant's Request for Judicial Notice.

Defendant seeks judicial notice of twelve documents. (Def.'s RJN, ECF No. 8–2.) Plaintiffs do not oppose. The Court may take notice of facts that are "not subject to reasonable dispute in that [they are] ... capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably ques-

tioned." Fed.R.Evid. 201(b)(2). Because the documents are either matters of public record or their accuracy is not subject to reasonable dispute, or both, the Court **GRANTS** Defendant's request and takes notice of each of them. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006).

B. **Plaintiffs complied with Proposition 65's 60–day notice requirement, as set forth in California Health & Safety Code § 25249.7(d)(1).**

■ Defendant contends "Plaintiffs' claims must be dismissed because they are based on an underlying violation of Prop 65 and Plaintiffs have not complied with Prop 65 [60 day] notice requirements." (Def.'s Mot. 9.) Specifically, "because Plaintiffs failed to provide a notice complying with section 25249.7 before filing their initial complaints, Plaintiffs are barred from bringing a Prop 65 private enforcement action." (Def.'s Mot. 10.)[1] Plaintiffs assure compliance. (Pls.' Opp'n 4, ECF No. 34.)

As an initial matter, Defendant's entire argument rests on the assumption that Plaintiffs alleged Proposition 65 causes of action in their first complaint. (*See* Def.'s Mot. 9.) Yet, Defendant has itself indicated that "[n]one of the original complaints expressly alleged Proposition 65 violations." (*Id.* 7.) Defendant instead points to the fact that "all three [of the original causes of action] cited Prop 65's safe harbor level" as the "underlying violation of Prop 65." (*Id.* 7, 9.)

Briefly mentioning a Proposition 65 safe harbor level is not synonymous with claiming a specified cause of action for a violation of Proposition 65. The only mention of Proposition 65 in Plaintiffs' initial complaint is the following: "According to Urvashi Rangan, a toxicologist and Executive Director of the Consumer Reports Food Safety & Sustainability Center, 'There is no 'safe' level of 4–MeI, but if you have to set a threshold, it should be well below the Prop 65 level (29 micrograms/day)—and more like 3 micrograms/day.'" (Compl. 2, ECF No. 1–1.) Read in context, Plaintiffs' sole mention of Proposition 65 in the initial complaint lies in a quote in which a toxicologist references the Proposition 65 safe

---

1. The Court notes the expanded scope of Plaintiffs' FACC. (*See* FACC 1.) Plaintiffs' initial complaint contained three causes of action: "[1] violations of the California Unfair Competition Law, Cal. Bus. & Prof.Code § 17200 et seq. (fraudulent prong); [2] violations of the California False Advertising Law, Cal. Bus. & Prof.Code § 17500 et seq.; and [3] violations of the California Consumers Legal Remedies Act, Cal. Civ.Code § 1750 et seq." (Compl. 5–6, ECF No. 1–1.) Plaintiffs' FACC added an additional six causes of action: "[4] intentional misrepresentation; [5] negligent misrepresentation; [6]unjust enrichment; [7] breach of express warranty; [8] violation of Proposition 65; [9] violations of the California Unfair Competition Law, Cal. Bus. & Prof.Code § 17200 et seq. (unlawful prong)." (FACC 10–15.)

Although neither party addresses this issue, it appears Plaintiffs' addition of these six

causes of action is permitted under the relation back doctrine—Rule 15(c)(1) of the Federal Rules of Civil Procedure—which states: "An amendment to a pleading relates back to the date of the original pleading when ... (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Here, all of Plaintiffs' additional causes of action "arose out of the [same] conduct, transaction, or occurrence set out" in the first complaint. Both the original and FACC are based on marketplace purchases of Goya beverages with allegedly improper labeling, where "[p]laintiff[s] would not have purchased the Malta Goya beverages if [they] knew they contained a substance known to be a carcinogen and believed to be dangerous at the levels actually present in the beverages." (Compl. 3; *See* FACC 4–5.)

harbor level in comparison to his own recommended level of safe exposure. With no Proposition 65 violations alleged in the first complaint, Defendant's motion with respect to notice fails.

Moreover, Plaintiffs have complied with Proposition 65's notice requirements. California's Health and Safety Code specifies a notice requirement for private suits alleging a failure to warn "before exposure to chemicals known to cause cancer or reproductive toxicity." Cal. Health & Safety Code §§ 25249.6, 25249.7. Actions "may be brought by a person in the public interest if both of the following requirements are met:"

(1) The private action is commenced more than 60 days from the date that the person has given notice of an alleged violation of *Section 25249.5* or *25249.6* that is the subject of the private action to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator . . .

(2) Neither the Attorney General, a district attorney, a city attorney, nor a prosecutor has commenced and is diligently prosecuting an action against the violation.

*Id.* § 25249.7(d). Defendant believes that the filing of Plaintiffs' initial complaint occurred before the 60-day notice period lapsed. At first glance, this may appear accurate as Plaintiff Cortina served her Proposition 65 notice on February 10, 2014, and Plaintiff Perez served her Proposition 65 notice on April 3, 2014. (FACC 14.) If based on the filing of the initial complaint, notice would only have been served 19 and 53 days, respectively, before the commencement of the action on January 23, 2014. (Compl. ECF No. 1–1.)

However, the actions requiring 60-day notice commenced when they were first alleged in Plaintiffs' July 25, 2014, FACC, and Plaintiffs therefore complied with Proposition 65's notice requirement. Because Plaintiffs' Proposition 65 claims were first asserted in Plaintiffs' July 25, 2014, FACC, notice was served 165 and 113 days, respectively, before the actions commenced, well beyond the required 60 days.[2]

The finding that Plaintiffs satisfied the notice requirement is consistent with the purpose of Section 25249.7. The lynchpin of Section 25249.7(d)(1)'s notice period is its ability to afford violators and regulatory agencies time to resolve the problem without resort to litigation—"required notice was intended to trigger agency enforcement, and to afford the [agency], state, and violator sixty days to resolve the problem without being harassed by a lawsuit." *In re Vaccine Cases,* 134 Cal. App.4th 438, 459, 36 Cal.Rptr.3d 80 (2005) (quoting *Yeroushalmi v. Miramar Sheraton,* 88 Cal.App.4th 738, 750, 106 Cal. Rptr.2d 332 (2001)).

Any notified party had plenty of time to act. Defendant, along with any notified regulatory agency, had between 113 and 165 days notice before Plaintiffs' alleged

**2.** The Court notes that neither party addresses notice compliance, or lack thereof, in respect to named plaintiff Andrew J. Park. In addition to plaintiffs Cortina and Perez, plaintiffs allege that Goya was given Proposition 65 notice on January 30, 2014, by Elmer Zelaya, and March 31, 2014, by "multiple individuals." (FACC ¶ 88.) Where Zelaya fits in to this action, and whether "multiple individu-als" includes Mr. Park, is unclear. However, because all plaintiffs in this class action assert identical claims against Goya, notice by a minority of the class members fulfills the true purpose of the notice requirement. In other words, regardless of the identity of the plaintiff who serves the notice, Goya is still put on notice of the alleged violations.

the causes of action that require only 60–day notice—almost double the required 60–days.

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss claims on the basis of a Proposition 65 notice violation.

**C. Plaintiffs did not improperly "plead around" Proposition 65 because, after finding Plaintiffs complied with Prop 65 notice, no underlying provision actually bars the claims alleged in the initial complaint.**

Defendant further contends that Plaintiffs may not attempt to dodge the notice requirement by pleading only non-Prop 65 claims in their first complaint, when those initial claims are in fact based on underlying Prop 65 violations. (*See* Def.'s Mot. 10.) ("Plaintiffs cannot plead around Prop 65 by recasting their claims as violations of the UCL, FAL or CLRA.") Plaintiffs counter that Defendant's claim is based on the "erroneous premise, that 'the only basis for an unfair business practices claim is an underlying statutory violation [of Proposition 65].'" (Pls.' Opp'n 4) (citing Def.'s Mot. at 10–11.) Rather, Plaintiffs argue their claims are "based on duties that arise under the UCL, FAL, and CLRA independent of Proposition 65."[3] (Pls.' Opp'n 5.) "The mere fact that Proposition 65 *also* regulates Goya's behavior ... does not mean that plaintiffs, in challenging Goya's behavior *under California's consumer protection statutes* when they filed their initial Complaints, improperly 'pled around' Proposition 65." (Pls.' Opp'n 6–7.)

---

**3.** The Court additionally notes that Plaintiffs' FACC expressly separated the UCL, FAL and CLRA claims from the Proposition 65 claim. (FACC 8–10.) (For the UCL, FAL, and CLRA causes of action, Plaintiffs included the following language in the FACC: "This Cause of

"A plaintiff may not bring an action under the unfair competition law if some other provision bars it. That other provision must actually bar it, however, and not merely fail to allow it." *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 184, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999). For example, "[i]f, in the Unfair Practices Act (or some other provision), the Legislature considered certain activity in certain circumstances and determined it to be lawful, courts may not override that determination under the guise of the unfair competition law." *Id.* at 183, 83 Cal.Rptr.2d 548, 973 P.2d 527.

Although failure to meet the notice requirements of California Health & Safety Code § 25249.7(d)(1) may bar a UCL claim, the case cited by Defendant is inapposite. *In re Vaccine Cases,* 134 Cal. App.4th at 454, 457, 36 Cal.Rptr.3d 80 (finding that a violation of "the [notice] requirements of section 25249.7, subdivision (d)(1) ... provide[d] an independent ground for affirming the trial court's dismissal of the Proposition 65 cause of action.") Here, Plaintiffs have complied with Prop 65 notice. Other than the alleged violation of 60–day notice, Defendant offers no indication of another Proposition 65 pleading deficiency to bar Plaintiffs' claim. (*See* Def.'s Mot. 10–11.) Therefore, Defendant has failed to show that Plaintiffs are attempting to skirt the notice requirement or otherwise "plead around" the Prop 65 requirements.

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss on this ground.

---

Action is not predicated on the violation of Proposition 65 but, rather, is based on Goya's failure to disclose Goya's 4–MeI content, which duty arose separately from, and independently of, Proposition 65.")

#### D. Plaintiffs' claims are not expressly preempted by federal law.

Next, Defendant contends that "Plaintiffs' claims are expressly preempted by federal law." (Def.'s Mot. 12.) Defendant supports this contention by claiming the Nutrition Labeling and Education Act of 1990 (NLEA) "added an express preemption clause to the FDCA [ ("Federal Food, Drug, and Cosmetic Act") ] that took over the historical role of states in regulating food and beverage labeling." (*Id.*) Defendant further maintains that this "express preemption provision precludes California from imposing any requirements that are 'not identical' to specified categories of food labeling requirements under federal law .... [m]oreover, state law is 'not identical' to federal law if it 'differs' from the requirements of federal law in any respect, or imposes an obligation that federal law does not." (*Id.* 13) (citations omitted.) Defendant argues that "Plaintiffs' claim that Goya has a duty to reveal the presence of 4–MEI in its products would mean it must list 4–MEI on product labels. But no federal law requires manufacturers to label food products as containing 4–MEI." (*Id.*) Thus, by "seek[ing] to impose an obligation not imposed by the FDA," when "manufacturers only need to include specific warnings promulgated by the FDA," Plaintiffs are improperly "using their state law claims to impose a requirement that Goya list 4–MEI on its Malta Goya." (*Id.* 14.)

Plaintiffs counter that "Goya's preemption argument is a Straw Man ... Plaintiffs do not ask that Goya be compelled to 'list 4–MEI on product labels,' or 'list the amount of 4–MeI in Malta Goya ... but instead only allege that' '[i]n advertising and selling Malta Goya beverages, Goya deceptively omits that these soft drinks contain dangerous levels of 4–MeI that expose consumers to cancer.' " (Pls.' Opp'n

10.) Plaintiffs specify that "there is no express preemption because there is no regulation governing either the use or disclosure of 4–MeI ... [w]ith no 4–MeI requirements imposed by the FDCA [ ("Federal Food, Drug, and Cosmetic Act") ], there simply cannot be any inconsistent requirement imposed by state law, and thus no express NLEA preemption." (*Id.* 10–11.) Lastly, Plaintiffs assert that regardless of Defendant's misplaced preemption claim, "the Goya beverages are misbranded under 21 U.S.C. § 343(a) ... because its 'label is false or misleading in any particular.' " (*Id.* 12.)

"[W]here, as here, the validity of a statute is being challenged, there must be a showing 'that no set of circumstances exists under which the ... [statute] would be valid.' " *Comm. of Dental Amalgam Mfrs. & Distributors v. Stratton*, 92 F.3d 807, 810 (9th Cir.1996) (quoting *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby* ("*Allenby*"), 958 F.2d 941, 943 (9th Cir. 1992)). Therefore, "to find that Proposition 65 is preempted by the [FDA], we 'must determine that all possible consumer product warnings that would satisfy Proposition 65 conflict with provisions [prescribed by the FDA].' " (*Id.*)

"It is well established that the party who asserts that a state law is preempted bears the burden of so demonstrating." *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1088, 72 Cal. Rptr.3d 112, 175 P.3d 1170 (2008). Such a presumption may be difficult to overcome when, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated ... in a field which the States have traditionally occupied,' " we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S.

470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). " '[C]onsumer protection laws such as the [UCL], false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption.' Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal.4th at 1088, 72 Cal.Rptr.3d 112, 175 P.3d 1170 (quoting the appellate court, *In re Farm Raised Salmon Cases*, 48 Cal. Rptr.3d 449, 453 (2006)).

Adding to this presumption against preemption, there is no indication that Congress intended the NLEA to preempt the state labeling requirements at issue in this case. The congressional notes point to the opposite conclusion: "[t]he Nutrition Labeling and Education Act [NLEA] of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act [codified as 21 U.S.C.A. § 343–1]." Nutrition Labeling and Education Act of 1990, Pub. L. No. 101–535, § 6(c)(1), 104 Stat. 2353.

Defendant suggests that 21 U.S.C.A. § 343–1(a)(3) in combination with 21 U.S.C.A. § 343(k) expressly preempts state labeling requirements. (*See* Def.'s Mot. 13.) 21 U.S.C.A. § 343(k) requires products containing artificial flavoring, artificial coloring, or chemical preservative to "bear[ ] labeling stating that fact." 21 U.S.C.A. § 343–1(a)(3) prohibits a state

from "directly or indirectly" establishing any requirement that is "not identical" to the requirement of § 343(k). In combination, these provisions require manufacturers to have a label stating a product contains an artificial coloring. Defendant asserts that these provisions expressly preempt state labeling laws addressing labeling of potential carcinogens. (*See* Def.'s Mot. 13.)

Defendant asserts an essentially identical argument with respect to provisions of 21 C.F.R. (*Id.*) Defendant suggests that 21 C.F.R. § 73.85 in combination with 21 C.F.R. § 101.22(k)(2) expressly preempts California labeling law. (*Id.*) These provisions authorize food manufacturers to declare caramel color additives on labels as "Artificial Color," "Artificial Color Added," "Color Added," "Colored with [Caramel]," or "[Caramel] Color." *See* 21 C.F.R. §§ 73.85, 101.22(k)(2). Defendant maintains that because these federal provisions specify only a general labeling requirement for caramel coloring, requiring Defendant to disclose the presence of 4–MeI (a byproduct of manufacturing caramel coloring) [4] would impose an obligation not mandated by the FDA. (*See* Def.'s Mot. 10, 13–14.) Defendant therefore suggests that California labeling law is preempted by the general labeling requirements for caramel coloring. (*Id.* 13–14.)

█ 21 U.S.C.A. § 343–1(a)(3), 21 U.S.C.A. § 343(k), 21 C.F.R. § 73.85 and 21 C.F.R. § 101.22(k)(2) apply not to carcinogens, but to artificial coloring additives in general. Plaintiffs are not claiming anything about regulations concerning ar-

---

4. Defendant admits: "According to the FDA, 4–MEI is a chemical compound that is *not* directly added to food. Instead, it is formed as a byproduct in some foods and beverages during the normal cooking process. For example, 4–MEI may form when coffee beans are roasted and when meats are roasted or grilled. It may also form as a trace impurity during the manufacturing of certain types of caramel coloring that are used to color cola-type beverages and other foods."

tificial coloring. (*See* FACC 24.) Plaintiffs' claims are based on a theory of omission—that Defendant's products failed to disclose the presence of substances known to the state to cause cancer. (*Id.*) (stating, "[i]n advertising and selling the Malta Defendant beverages, Goya deceptively omits that these soft drinks contain dangerous levels of 4–MeI that expose consumers to cancer.") Defendant in fact agrees that the provisions Defendant claims preempt state law contain no requirements for omissions or warnings of potential carcinogens. Defendant's own motion explicitly states that the provisions Defendant claims preempt state law "do not impose any limitations with regards to [the] 4–MEI [alleged carcinogen]." (*See* Def.'s Mot. 4–5.) Moreover, Defendant admits that "no federal law requires manufacturers to label food products as containing 4–MEI." (*Id.* 14.) Because 21 U.S.C.A. § 343–1(a)(3), 21 U.S.C.A. § 343(k), 21 C.F.R. § 73.85, and 21 C.F.R. § 101.22(k)(2) apply generally to the labeling of artificial coloring, and do not address the labeling of carcinogens, these provisions do not to preempt state law labeling requirements of potential carcinogens.

Furthermore, the FDA has made statements that support Plaintiffs' position. When questioned "What is [the] FDA doing about the presence of 4–MeI[?]," the FDA responded:

> ... FDA is currently reviewing all available data on the safety of 4–MEI and is reassessing potential consumer exposure ... This safety analysis will help FDA determine what, if any, regulatory action needs to be taken. Such actions could include setting a limit on the amount of 4–MEI that can be present in caramel coloring. However, in the interim, FDA is not recommending that consumers

change their diets because of concerns about 4–MEI.

(Def.'s Mot. 5) (internal quotations and citations omitted.) The FDA's response is consistent with a finding that the FDA has not yet chosen to preempt state law concerning 4–MeI.

Plaintiffs additionally argue that Defendant's preemption assertion conflicts with case law, and logic. (*See* Pls.' Opp'n 11 n. 3.) Specifically, Plaintiffs maintain that Defendant's preemption argument is a claim that Proposition 65, in its entirety, is preempted by federal law. (*Id.*)

Courts have denied attempts at Proposition 65 preemption. *See Allenby,* 958 F.2d 941 (finding FIFRA and the Federal Hazardous Substances Act did not preempt Prop 65); *see also Comm. of Dental Amalgam Mfrs. & Distributors v. Stratton,* 92 F.3d 807 (9th Cir.1996) (finding the medical device amendments (MDA) did not preempt Prop 65 consumer warning requirements). When courts have found Proposition 65 preempted, they have done so because the FDA promulgated specific regulations governing a certain type of labeling. *See Papike v. Tambrands Inc.,* 107 F.3d 737, 739 (9th Cir.1997) (citing the exact federal requirements of tampon labeling to find MDA preempted the more general requirements of Prop 65).

As previously discussed, Defendant has not cited a valid discrepancy between federal beverage labeling requirements and the state law claims here. As no appropriate federal authority has been cited, the Court refuses to apply abstract federal provisions to preempt California law.

 As a final matter, the Court addresses Plaintiffs' overarching cover, that "[i]n any event, the Goya beverages are misbranded under 21 U.S.C. § 343(a) because its 'label is false or misleading in

any particular.'"[5] (Pls.' Opp'n 12.) This Court agrees that "where plaintiffs are only seeking to impose state law requirements that are identical to federal regulations, there is no express preemption under the FDCA." *Ivie v. Kraft Foods Global, Inc.*, 961 F.Supp.2d 1033, 1043 (N.D.Cal.2013). The words of the Central District offer a tight analogy to the final point raised by Plaintiffs:

Defendant implies that if a food producer has otherwise complied with the provisions of § 343 and its implementing regulations, no *ad hoc* claim for a "false or misleading" label can be brought. Defendant argues that the claim would, in effect, impose requirements that "are not imposed" or "differ from those" explicitly laid out in the federal statutes and regulations and, therefore, would be preempted. This logical argument is undercut by the lack of any indication that the FDA could not sue under § 343(a) for a "false or misleading" label where the label does not violate another, more specific food labeling statute or regulation. In fact, the authority that exists strongly suggests the opposite. Congress presumably chose to include § 343(a) in the statutory scheme in order to allow the FDA to target specific false or misleading labels without having promulgated regulations that address the specific false or misleading aspect of the particular label. Because Congress has also allowed states, at the very least, to pass statutes identical to § 343(a), a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a), just as the FDA would be able to sue to enforce § 343(a) itself.

*Zupnik v. Tropicana Products, Inc.*, No. CV 09–6130 DSF RZX, 2010 WL 6090604, at *2 (C.D.Cal. Feb. 1, 2010). This Court agrees that "a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a)." *Id.*

Plaintiffs' multiple allegations that Defendant's marketing and labeling is false or misleading is identical to the federal false or misleading aspect of § 343(a) and therefore does not fall within the preemption provisions of 21 U.S.C.A. § 343–1. Plaintiffs' intentional misrepresentation and negligent misrepresentation claims are based on the "falsity of the representations" in Goya's marketing and labeling; because the "false and misleading" basis of Plaintiffs' claims parallel § 343(a), which deems a food misbranded when it's label is "false or misleading in any particular," "plaintiffs are only seeking to impose state law requirements that are identical to federal regulations, [and] there is no express preemption under the FDCA." (*See* FACC 10–12.); *see Ivie*, 961 F.Supp.2d at 1043.

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss with respect to preemption.

**E. The Court will not defer to the FDA under the doctrine of primary jurisdiction.**

Defendant contends that "[e]ven if the Court does not find that Plaintiffs' claims are barred ... the Court should still dismiss or stay this action because Plaintiffs' claims fall squarely within the primary jurisdiction of the FDA." (Def.'s Mot. 15.) Defendant believes "[t]he devel-

---

**5.** § 343(a) states: "A food shall be deemed to be misbranded—... (a) False or misleading label ... If (1) its labeling is false or misleading in any particular, or (2) in the case of a food to which section 350 of this title applies, its advertising is false or misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title." 21 U.S.C.A. § 343.

opment of standards in this case—as to whether the presence of 4–MEI should be explicitly disclosed and more dramatically, whether 4–MEI can be included in foods at all—will effectively establish nationwide standards of conduct for food and beverage manufacturers," and "Congress intended that this type of broad determination be made by the FDA in the first instance rather than the courts." (*Id.*)

Plaintiffs argue that "[t]his action may plausibly be adjudicated without FDA's expertise." (Pls.' Opp'n 16.) "This action ... does not seek to establish any particular standard," claim the plaintiffs, "[i]t only asks whether *Goya's* specific behavior, failing to disclose that Malta Goya beverages contain approximately 350 micrograms of 4–MeI per serving, and its potential health harms, is deceptive." (*Id.* 18 (emphasis in original).)

 The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir.2002). The doctrine "does not require that all claims within an agency's purview be decided by the agency. Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir.2002).

 In applying the doctrine of primary jurisdiction to a motion to dismiss, the "question is whether any set of facts could be proved which would avoid application of the doctrine ....[w]hether this question can be answered on a motion to dismiss depends on the nature of the case." *Davel Commc'ns, Inc. v. Qwest*

*Corp.*, 460 F.3d 1075, 1088 (9th Cir.2006). Where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied on a motion to dismiss; if, on the other hand, the primary jurisdiction doctrine applies on any set of facts that could be developed by the parties, there is no reason to await discovery, summary judgment, or trial, and the application of the doctrine properly may be determined on the pleadings." (*Id.*) This case is of the latter variety.

 In applying the doctrine of primary jurisdiction, courts "traditionally look for four factors identified in *General Dynamics*. Under this test, the doctrine applies where there is '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'" *Davel Commc'ns, Inc.*, 460 F.3d at 1086–87 (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir.1987)).

Although Congress has likely placed the issue of product labeling and warning requirements within the broadly defined jurisdiction of the FDA to generally oversee, the issues facing the Court do not appear to "require [FDA] expertise or uniformity in administration." *Id.* "Without question, the FDA has extensively regulated food labeling ... Nonetheless, plaintiffs advance a relatively straightforward claim: they assert that defendant has violated [state] regulations and marketed a product that could mislead a reasonable consumer. As courts faced with state-law challenges in the food labeling arena have reasoned, this is a question 'courts are well-equipped to handle.'" *See Chacanaca v. Quaker*

*Oats Co.,* 752 F.Supp.2d 1111, 1124 (N.D.Cal.2010) (quoting *Lockwood v. Conagra Foods, Inc.,* 597 F.Supp.2d 1028 (N.D.Cal.2009)).

Defendant "has given no reason why determining whether a label is misleading is outside the ability of the court." *Morgan v. Wallaby Yogurt Co., Inc.,* No. 13–CV–00296–WHO, 2013 WL 5514563, at *4 (N.D.Cal. Oct. 4, 2013). Defendant argues that FDA expertise is needed to determine threshold issues such as "whether the presence of 4–MEI should be explicitly disclosed," and "what standards govern 4–MEI in caramel coloring used in foods." (Def.'s Mot. 15, 16.) Defendant further believes FDA expertise is needed to determine "[i]f products containing ... 4–MEI[ ] truly pose a health risk." (*Id.* 18.) With such claims, Defendant overlooks the bedrock principles guiding the Court's 12(b)(6) determination.

The court must accept all allegations of material fact as true and construe them in light most favorable to the non-moving party. *Cedars–Sinai Med. Ctr.,* 497 F.3d at 975. Material allegations, even if doubtful in fact, are assumed to be true. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Where the defendant seeks to have a "threshold decision" transferred to a regulatory agency, and this decision must necessarily be resolved in the plaintiffs favor at the motion to dismiss stage, primary jurisdiction doctrine is inapplicable. *Cost Mgmt. Servs., Inc. v. Washington Natural*

*Gas Co.,* 99 F.3d 937, 948–49 (9th Cir. 1996).

Based on the above principles, Plaintiffs' allegation that 4–MeI in the Goya beverages is dangerous must be accepted as true at the motion to dismiss stage. Plaintiffs do not seek a ruling on the determination of whether 4–MeI is a dangerous substance—a determination possibly within FDA control. Rather, Plaintiffs pursue legal claims based on state law labeling requirements. The determination of labeling violations based in law is not within the discretion of the FDA, nor does the resolution of such claims require FDA expertise or undercut uniformity in regulation.

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss with respect to the doctrine of primary jurisdiction.

### F. Plaintiffs' claims meet the pleading requirements of FRCP 8.[6]

Defendant sets forth three main arguments in support of its claim that Plaintiffs' "UCL, FAL, CLRA, and negligent and intentional misrepresentation claims" are not plausible. (*See* Def.'s Mot. 19.) First, Defendant offers the blanket claim that Plaintiffs' FACC fails Rule 8's plausibility standard because plaintiffs "cannot plausibly allege that Goya had any duty to disclose the presence of 4–MeI to consumers." (*Id.*) As support for this accusation, Defendant states, "neither California law nor federal law creates a duty to remove 4–MEI or disclose its presence." (*Id.*)

---

6. As an initial matter, the Court notes Defendant's mention of a heightened pleading requirement. (Def.'s Mot. 19) (stating, "[e]xcept for the alleged Proposition 65 violation, all of Plaintiffs' claims, including breach of express warranty, are fraud-based claims subject to heightened pleading requirements.") Yet, other than this brief mention, the remainder of Defendant's motion relies on the traditional plausibility standard of Rule 8. (*Id.*)

("... Rule 8(a) 'requires ... must be dismissed because they fail to satisfy the plausibility standard of Rule 8 ... Rule 8 demands ... cannot allege a plausible claim as required by Rule 8.' ") The Court interprets Defendant's reliance on the traditional plausibility standard as its intention. Thus, as is the traditional standard, the Court frames plausibility under Rule 8.

Second, Defendant maintains that Plaintiffs "include no specific allegations as to the 4–MEI content of Goya Sangria and Goya Ginger Beer other than they both '[l]ike Malta Goya, contained high levels of 4–MEI during approximately the same time period.'" (*Id.* 20) (citing FACC 20.) In other words, "[s]imply claiming one product is bad because another product is bad does not support plausibility." (Def.'s Mot. 20.) Finally, Defendant believes Plaintiffs' claims lack plausibility because "the FDA has explicitly stated that it has no reason to believe that there is any immediate or short-term danger presented by 4–MEI at the levels expected in food from the use of caramel coloring." (*Id.* 20.) Defendant's arguments fail on all three grounds.

### 1. Plaintiffs' FACC plausibly alleges a duty to disclose.

Contrary to Defendant's contention, Plaintiffs have plausibly alleged a duty to disclose under their UCL, FAL, CLRA, and negligent and intentional misrepresentation claims. The Court addresses each in turn.

■ Plaintiffs' UCL claims are plausible. The UCL requires a duty to disclose when not disclosing would result in an "unlawful, unfair or fraudulent business act or practice." *See* Cal. Bus. & Prof.Code § 17200. Plaintiffs' FACC alleges a plausible claim under the UCL's fraudulent prong by stating "Goya's deceptive omission of the dangerous amount of 4–MeI in the Goya beverages is a 'fraudulent' practice within the meaning of the UCL in that the omission is likely to deceive reasonable consumers and the public." (FACC 8.) Plaintiffs' FACC also alleges a plausible claim under UCL's unlawful prong by stating, "Goya's failure to make the clear and reasonable warning mandated by Proposition 65 is an 'unlawful' practice within the meaning of the UCL ... [h]ad Goya made such a warning, Plaintiffs ... would not have purchased the Goya beverages." (*Id.* 15.) The Court finds it plausible for the alleged labeling omission of a potentially dangerous substance to constitute an "unlawful" and/or "fraudulent business act or practice." *See* Cal. Bus. & Prof.Code § 17200.

■ Plaintiffs' False Advertising Law (FAL) claim is plausible. The FAL requires a duty to disclose by prohibiting any statement in connection with the sale of goods "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof.Code § 17500. Plaintiffs' FACC alleges a plausible claim under California's FAL by stating "Goya's deceptive omission of the amount and health harms of the 4–MeI in the Goya beverages was likely to deceive reasonable consumers and the public ... Goya knew, or reasonably should have known, that it was deceptively omitting material information." (FACC 8.) The Court finds that it is plausible for a labeling omission of a potentially dangerous substance to be both within the knowledge of the producer and "untrue or misleading." *See* Cal. Bus. & Prof.Code § 17500.

■ Plaintiffs' CLRA claim is plausible. The CLRA contains a duty to disclose through proper representation and advertisement of products. The CLRA prohibits:

(a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(a)(9) Advertising goods or services with intent not to sell them as advertised;

(a)(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ.Code § 1770. Plaintiffs' FACC alleges a plausible claim under CLRA by stating that "Goya's policies, acts and practices were designed to, and did, result in the purchase and use of the products ... and violated and continue to violate the [above] sections of the CLRA." (FACC 9.) The Court finds it plausible that Defendant's activities—namely, its alleged labeling omission of a potentially dangerous substance—violated Defendant's duty to properly represent and advertise products. *See* Cal. Civ.Code § 1770.

■■■ Plaintiffs' negligent misrepresentation claim is also plausible. Under California law, negligent misrepresentation is narrower than fraud, as it lacks the element of intent to deceive. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir.2008). "'Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.'" *Id.* (citing *Intrieri v. Superior Court*, 117 Cal. App.4th 72, 86, 12 Cal.Rptr.3d 97 (2004)). Plaintiffs' FACC alleges that "Goya made representations to Plaintiffs and class members that Goya was safe for consumption, which was contained in Goya's advertising, on its website, and on the labels of the Goya beverages ... [h]owever, Goya's

representations were false in that the Goya beverages contain 4–MeI at very high levels, in an amount believed to expose consumers to substantial potential health risks ... [w]hen Goya made the representations set forth above, it knew or should have known them to be false." (FACC 11–12.) By asserting that Defendant made representations to consumers indicating the Goya product is safe for consumption "without reasonable ground for such belief," Plaintiffs have stated a plausible claim for negligent misrepresentation. *See Platt Elec. Supply, Inc.*, 522 F.3d at 1055.

■■■ Plaintiffs' intentional misrepresentation claim is plausible. The elements of a claim for intentional misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.Supp.3d 1141, 1149 (S.D.Cal.2014) (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004)). Plaintiffs' FACC alleges a plausible intentional misrepresentation claim by stating that "Goya represented to Plaintiffs and class members that the Goya beverages were safe for consumption ... [h]owever, Goya failed to disclose that the Goya beverages contain high levels of 4–MeI ... [w]hen Goya made the subject representations, Goya knew they were false, and made the representations with the intent to deceive and defraud Plaintiffs and class members to induce them to act in reliance on those misrepresentations, or with the expectation that they would so act." (FACC 10.) The Court finds Plaintiffs plausibly pleaded that Defendant knew the beverages were unsafe,[7] yet misrepresen-

---

7. Although a plaintiff must "plead[ ] factual

content that allows the court to draw the

ted the beverages as safe with the intent that consumers rely on the appearance of safety in their purchase decision.

### 2. Plaintiffs may adequately represent purchasers of Goya Sangria and Goya Ginger Beer.[8]

"[P]laintiffs purchased Malta Goya, but not Goya Sangria or Goya Ginger Beer." (Pls.' Opp'n 23.) Defendant seeks dismissal of claims against Goya Sangria and Goya Ginger Beer because Plaintiffs "include no specific allegations as to the 4–MEI content of Goya Sangria and Goya Ginger Beer other than they both '[l]ike Malta Goya, contained high levels of 4–MEI during approximately the same time period.'" (Def.'s Mot. 20) (citing FACC 4.) In other words, "[s]imply claiming one product is bad because another product is bad does not support plausibility." (Def.'s Mot. 20.)

Based on the substantial similarity between the products, as explained later in this order, the Court finds that Plaintiffs may adequately represent purchasers of Goya Sangria and Ginger Beer.

### 3. Plaintiffs' claims are plausible, regardless of the FDA's statement regarding immediate or short-term danger.

Defendant cites a statement made by the FDA to support the contention that it has no duty to disclose the presence of 4–MeI. (*See* Def.'s Mot. 20.) The snippet of the FDA's statement cited by Defendant

provides that the FDA "has no reason to believe that there is any immediate or short-term danger presented by 4–MEI at the levels expected in food from the use of caramel coloring." (*See* Def.'s Mot. 20.) Plaintiffs maintain that Defendant's reliance on the statement is misplaced. (Pls.' Opp'n 19.)

Contextualized, the entire quote reads: "*Based on the available information,* FDA has no reason to believe that there is any immediate or short-term danger presented by 4–MEI at the levels expected in food from the use of caramel coloring." (RJN Ex. 4) (emphasis added.) On the same webpage, the FDA indicates it is continuing to review and reassess information:

To ensure that the use of caramel coloring in food continues to be safe, FDA is currently reviewing all available data on the safety of 4–MEI and is reassessing potential consumer exposure to 4–MEI from the use of Class III and Class IV caramel coloring in food products. This safety analysis will help FDA determine what, if any, regulatory action needs to be taken. Such actions could include setting a limit on the amount of 4–MEI that can be present in caramel coloring. However, in the interim, FDA is not recommending that consumers change their diets because of concerns about 4–MEI.

(*Id.*) When taken together, it appears that the FDA is saying is it does not know whether, and in what amounts, 4–MEI presents a danger, but is looking into the

---

reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), "the rule may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989). The purpose of specific pleading requirements for fraud is often simply to "identif[y] the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *See*

*Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1994).

8. The issue of substantial similarity between Malta Goya, Goya Sangria, and Goya Ginger Beer is addressed in further detail in a later section of this order. Defendant raises this issue multiple times throughout its motion to dismiss.

situation. This response is typical of such a large agency with vast regulatory tasks and "limited resources."[9] *See Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d at 1035.

Saying the FDA has "no [current] reason to believe" there is a danger is not the same as saying there is no danger. It is possible the FDA will determine there is in fact a danger of 4–MEI in general, or at a specified level. However, the Court declines to speculate on the potential outcome of the FDA's investigation. While the FDA's decision idles, Plaintiffs' claims remain plausible.

▮ Furthermore, even if the FDA had reached a general conclusion on the danger presented by 4–MeI, there is no reason to defer unwaveringly to the FDA's decision in determining plausibility of a legal action. *Id.* (finding a claim of misleading pasta sauce labeling "not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading."). Regulatory decisions are often prolonged, coming about only following a significant delay from the point of discovering a danger.[10] Advances in the science and technology responsible for detecting carcinogens is likely fast-paced; it may be reality that at certain times the private sector is best equipped to first alert a

governmental agency of a potential danger.[11] Thus:

> [E]ven if it were the case that the FDA had clearly and specifically found that [4–MeI is] safe in small quantities (notwithstanding possible consequences of cumulative exposure), that would not justify dismissing the complaint under *Twombly* and *Iqbal* as "implausible"... there is no basis on a motion to dismiss to conclude the FDA is so infallible that it is wholly implausible for plaintiffs to contend [4–MeI] present[s] a health risk. Particularly given that scientific understanding of the risks presented by particular substances often evolves over time, the FDA pronouncements on which [Goya] relies are insufficient to support dismissing the complaint on implausibility grounds.

*In re Quaker Oats Labeling Litig.*, No. C 10–0502 RS, 2012 WL 1034532, at *2 (N.D.Cal. Mar. 28, 2012).

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss on the basis that Plaintiffs' claims did not meet Rule 8's pleading requirements.

### G. Plaintiffs' breach of express warranty claim does not comply with the statutory notice requirements.

▮ Defendant asserts that "Plaintiffs' cause of action for breach of express warranty must be dismissed because of their

---

9. *See also* Veronica S. Jae, *Simplifying FDA-SIA: The "Fast Track" to Expedited Drug Approval Efficiency*, 66 Admin. L.Rev. 173, 174 (2014) (stating that the FDA has a limited amount of resources, and is "underfunded given the amount of commerce it regulates. The FDA regulates approximately twenty cents of each consumer dollar spent in the United States, which translated to over $2.28 trillion in 2013 alone. The FDA has faced additional cutbacks to its budget recently.")

10. *See* Frederick C. Schafrick, *Product Liability Suits for Failure to Warn of the Hazards of Regulated Products*, 32 Tort & Ins. L.J. 833,

865 (1997) (noting "that government regulations may lag behind the state of developing knowledge and thus be out-of-date by the time the plaintiff is injured.")

11. *See* David A. Kessler & David C. Vladeck, *A Critical Examination of the Fda's Efforts to Preempt Failure–to–Warn Claims*, 96 Geo. L.J. 461, 484 (2008) ("Top-down surveillance is no substitute for failure-to-warn litigation, which provides the FDA, doctors, and patients with information about new risks that is otherwise unavailable to the agency.")

failure to provide pre-suit notice of any alleged breach." (Def.'s Mot. 21.) Plaintiffs respond they "have sufficiently pled breach of express warranty" but fail to address Defendant's argument that Plaintiffs did not provide the requisite pre-suit notice. (Pls.' Opp'n 20–21.)

A "buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Cal. Com.Code § 2607. "To avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir.2011) (citing *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1142 (N.D.Cal.2010)). "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court. This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice." *Alvarez*, 656 F.3d at 932 (citation omitted).

Here, Plaintiffs fail to provide any evidence or point to any pleadings that show they provided the requisite notice. The only notice Plaintiffs contend they sent is the Prop 65, 60–day notice, discussed previously.[12]

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss on the basis that Plaintiffs did not provide pre-suit notice of an alleged breach of express warranty. The breach of express warranty claim is **DISMISSED WITH PREJUDICE.**

### H. Plaintiffs' unjust enrichment claim stands.

Defendant first argues that "Plaintiffs' claim for unjust enrichment must be dismissed because it is not an independent cause of action.... California law does not recognize 'unjust enrichment' as an independent and separate cause of action." (Def.'s Mot. 22.) Second, Defendant suggests Plaintiffs' claim should be dismissed because Plaintiffs failed to appropriately allege the "underlying basis of [their] claim." (*Id.*) In other words, Defendant believes the claim should be dismissed because seeking restitution for unjust enrichment is "based on fraud[,] requires the same elements as a cause of action for fraud," and "Plaintiffs' FACC fails to plead fraud with plausibility required by Rule 8, and more importantly, fails to allege either a misrepresentation or a duty to disclose additional information by Goya."[13](*Id.*)

Plaintiffs respond first that "a plaintiff may bring a claim for unjust enrichment in the alternative as a quasi-contract action under California law." (Pls.' Opp'n 21.) Second, Plaintiffs support Rule 8 plausibility by reminding Defendant that "[p]laintiffs paid for a 'nutritious' product and they got something different from Goya, whereas Goya was unjustly enriched by

12. Prop 65 notice differs from breach of warranty notice. Prop 65 notice puts the receiving party on notice of a Prop 65 claim. Breach of warranty notice notifies of a breach of warranty claim. Prop 65 notice notifies "the Attorney General and the district attorney, city attorney, or prosecutor." Breach of warranty notice notifies the seller. Cal. Com. Code § 2607; Cal. Health & Safety Code § 25249.7(d).

13. The Court notes an apparent discrepancy that is a recurring theme in Defendant's motion to dismiss. Defendant often seems to intermix Rule 9 (pleading fraud with particularity) and Rule 8 (general rules of pleading).

plaintiffs and other putative class members [purchases]." (*Id.* 22.)

In California, "there is a division in the law" on the question of unjust enrichment. *Mohebbi v. Khazen,* 50 F.Supp.3d 1234, 1260 (N.D.Cal.2014). Courts have found both a cause of action for unjust enrichment, and not. *Ghirardo v. Antonioli,* 14 Cal.4th 39, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996) (allowing recovery for unjust enrichment); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.,* 754 F.Supp.2d 1145, 1194 (C.D.Cal.2010) ("Simply put, there is no cause of action in California for unjust enrichment.") (internal quotations and citations omitted). Given this conflict, the Court declines to conclude that this claim is legally incognizable. Therefore, Defendant's motion to dismiss this claim is **DENIED** on this ground.

■ "The elements of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1070 (9th Cir.2014) (quoting *Lectrodryer v. SeoulBank,* 77 Cal. App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000)). Plaintiffs' FACC plausibly alleges the first element, Defendant's receipt of a benefit. (FACC 13) ("By its wrongful acts and omissions, Goya was unjustly enriched at the expense of Plaintiffs and class members, who did not receive the goods to which they were entitled, namely beverages that did not contain very high levels of 4 MeI, for the payments made to Goya, and thus Plaintiffs and class members were unjustly deprived.")

Plaintiffs' FACC also plausibly alleges the second element, Defendant's unjust retention of the financial benefit at the expense of the purchasers. (*Id.*) ("It would be inequitable and unconscionable for Goya to retain the profit, benefit and/or other compensation it obtained from its

deceptive, misleading, and unlawful conduct alleged herein.").

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss the unjust enrichment claim.

## I. Defendant's motion to strike is denied.

■ Defendant asserts that "should any claims not be dismissed, any allegations concerning Goya Sangria and Goya Ginger Beer must be stricken for failure to meet the heightened pleading requirements for fraud-based claims." (Def.'s Mot. 23.) Defendant contends Plaintiffs did not specify the "'who, what, when, where and how of the misconduct.'" (*Id.*) (quoting *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (2009)). Specifically, Plaintiffs "fail to allege ever purchasing, consuming and/or reading or seeing any labels or advertisements concerning Goya Sangria and Goya Ginger Beer. There is also no allegation concerning the presence of 4–MEI in either Goya Sangria or Goya Ginger Beer." (Def.'s Mot. 23.)

Plaintiffs respond that "because, as alleged in the FACC, [Malta Goya, Goya Sangria and Goya Ginger Beer] are 'substantially similar[,]' plaintiffs, under Rule 23, may represent purchasers of those products." (Pls.' Opp'n 23.) Plaintiffs admit no named plaintiff purchased Goya Sangria or Goya Ginger Beer, "[h]owever, due to the substantial similarity in their ingredients, *i.e.,* their caramel coloring containing 4–MeI, and in Goya's conduct, its deceptive omission of information about the content and health harms of the 4–MeI in the beverages, plaintiffs should be permitted to represent purchasers of those products." (*Id.* 23–24.)

There are court decisions going both ways on this issue, with some finding that a plaintiff has no standing to pursue claims

based on products he or she did not purchase. *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D.Cal. July 11, 2012). However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D.Cal.2012). Further, some courts have held that "the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation" at the class certification stage. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D.Cal.2011).

The Court will revisit this issue at the class certification stage in determining whether a class can be certified and, if so, the "contours of that class." *See Dorsey v. Rockhard Laboratories, LLC*, No. CV 13–07557 DDP RZX, 2014 WL 4678969, at *4 (C.D.Cal. Sept. 19, 2014). Nonetheless, it appears that the named Plaintiffs' claims are sufficiently similar to those of putative class members who purchased Goya Sangria or Goya Ginger Beer.

First, all three are beverages. Second, according to the FACC, all three beverages "contain an amount of 4–methylimidazole (4–MeI), a carcinogen, sufficient to expose consumers to substantial health risks." (FACC 1.) Plaintiffs specifically reference the problematic composition of all three drinks: "Like Malta Goya, Goya Sangria and Goya Ginger Beer contained high levels of 4–MeI during approximately the same time period." (*Id.* 4.) Third and finally, Plaintiffs allege that Malta Goya, Goya Sangria, and Goya Ginger Beer were

all improperly promoted, labeled, and advertised. Specifically, Plaintiffs contend that "Goya … deceptively omits that the Goya beverages contain very high levels [and] amounts of 4–MeI, and that the 4–MeI presents a potential health harm." (*Id.* 1.)

In light of the foregoing, the Court finds that Malta Goya, Goya Sangria, and Goya Ginger Beer are substantially similar enough to survive the present motion. All three products are beverages, sufficiently similar in composition, and subject to the same mislabeling allegations. Therefore, the Court **DENIES** Defendant's motion to strike.

## IV. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss, as specified above. The Court also **DENIES** the motion to strike.

**IT IS SO ORDERED.**